UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ACCESS 4 ALL, INC., a Florida not for profit
corporation, and PETER SPALLUTO, individually,

                            Plaintiffs,

       -v-

TRUMP INTERNATIONAL HOTEL AND TOWER
CONDOMINIUM,

                       Defendant.

Case No. 04-CV-7497 (KMK)

OPINION and ORDER

---

<u>Appearances</u>:

Lawrence Arthur Fuller, Esq.
Fuller & Fuller & Associates
North Miami, FL
*Counsel for Plaintiffs*

Mario B. Mikelinich, Esq.
Syossett, NY
*Counsel for Plaintiffs*

Gregory R. Begg, Esq.
Denis Serkin, Esq.
Peckar & Abramson, P.C.
River Edge, NJ
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Plaintiffs Access 4 All, Inc. and Peter Spalluto bring this action under Title III of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, for a declaratory

judgment, an injunction requiring all readily achievable alterations mandated by the ADA, and

attorneys' fees.  Defendant Trump International Hotel and Tower Condominium moves to

dismiss or, in the alternative, for summary judgment.  For the reasons stated herein, this motion

is DENIED in part and GRANTED in part.

## I.  Background

For the purposes of this motion, the Court assumes the following of the Plaintiffs' allegations are true.  Plaintiff Access 4 All, Inc., ("Access 4 All") is a non-profit Florida corporation that seeks to represent the interests of disabled persons and ensure that disabled persons are not discriminated against because of their disabilities.  (Am. Compl. ¶ 11)  Plaintiff Peter Spalluto ("Spalluto"), a Florida resident and member of Access 4 All, is a quadriplegic who uses a wheelchair for mobility.  (*Id.* ¶ 12; Aff. of Peter Spalluto ¶ 1 ("First Spalluto Aff."))  Defendant Trump International Hotel and Tower Condominium ("Trump Tower") is an unincorporated association of owners of private, residential, hotel, and commercial units in a building located at 59th Street and Central Park West in New York City.  (Def.'s Brief in Supp. of its Mot. to Dismiss and for Summ. J. 1 ("Def.'s Br."))

The Amended Complaint alleges that Defendant discriminated against Plaintiffs by denying them access to, and equal enjoyment of, the goods, services, facilities, and privileges available to non-disabled persons at Trump Tower.  Specifically, Plaintiffs allege that on July 22, 2004, Spalluto went to Trump Tower, staying overnight at the facility's hotel.  (Am. Compl. ¶ 12; First Spalluto Aff. ¶ 4)  Spalluto alleges that he found the facility inaccessible, as it lacked sufficient space for wheelchair entry, accessible room controls, and a "roll-in shower," (First Spalluto Aff. ¶ 4), and that this lack of accommodation endangered his safety.  (Am. Compl. ¶ 13)  Spalluto states he has family in New York, travels to New York City often on business (over 15 trips in the last three years), and has a definite intention to return to Trump Tower.  (First Spalluto Aff. ¶¶ 2-3, 5; Am. Compl. ¶ 17)  Spalluto also states that, at the time of his affidavit, he

had planned three additional business trips to New York and that he planned to visit the restaurants and shops at Trump Tower, specifically, Jean Georges.  (First Spalluto Aff. ¶¶ 2, 5)

In addition to the alleged discriminatory facilities Spalluto encountered on his visit to Trump Tower, Plaintiffs also allege 34 violations of the ADA Accessibility Guidelines.  (Am. Compl. ¶ 19)  These violations were noted by an ADA compliance expert hired by Plaintiffs who inspected the facilities at Trump Tower and reported his findings to Plaintiffs' counsel by letter dated August 22, 2003.  (Affirmation of Gregory R. Begg, Esq., in Supp. of Def.'s Mot. to Dismiss ("Begg Aff.") Ex. C)

## II.  Discussion

### A.  Standard of Review

#### 1.  Treating Defendant's Motion as a Motion for Summary Judgment

Defendant brings this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), but also argues that the Court should consider matters outside the pleadings and thereby convert its motion into a Motion for Summary Judgment under Rule 56.   Plaintiffs, in their reply papers and at oral argument, treat the Motion primarily as one for Summary Judgment and also ask the Court to consider affidavits and exhibits that were not attached to or incorporated by the Amended Complaint, notably, the Spalluto Affidavit.  (Pls.' Resp. to Def.'s Mot. to Dismiss and for Summ. J. 4-6 ("Pls.' Reply"))  When evaluating the legal viability of a complaint on a motion to dismiss, courts must "confine [their] consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'"  *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. West Point-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.

3

1991)).  When a court ruling on a motion to dismiss considers matters outside the pleadings, it is required to convert the motion from a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).[1]  This is because the purpose of a Rule 12(b)(6) motion is to test the "legal feasibility of the complaint," not the weight of the evidence that might be offered to support it. *Id.*  When the parties ask the Court to weigh evidence outside of the pleadings and thereby test the merits of the evidence, not the complaint, such action is "more appropriately reserved for the summary judgment procedure, governed by Rule 56, where both parties 'may conduct appropriate discovery and submit the additional supporting material contemplated by' that rule." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002)).

Normally, summary judgment is inappropriate before the parties have had an opportunity for discovery.  *See Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *Disabled in Action of Metro. N. Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518, 2003 WL 1751785, at *14 (S.D.N.Y. Apr. 1, 2003) ("Plaintiffs have not obtained discovery from defendant related to their claims and thus their claims are not ripe for summary adjudication.").  When only one party seeks to convert a motion to dismiss into a motion for summary judgment prior to discovery by offering additional exhibits and affidavits outside the pleadings, a court may simply disregard any such submissions and decide the motion to dismiss on the merits of the pleadings

---

[1]On a motion to dismiss for lack of standing, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994). Here, Plaintiffs did not ask, nor did the Court grant, further leave to amend or supplement the pleadings.  Instead, Plaintiffs submitted two affidavits including particularized allegations of fact to support standing with their Reply Brief.

alone.  *See Disabled in Action*, 2003 WL 1751785, at *14 (disregarding factual allegations submitted in affidavits but not included within the original amended complaint).  However, a court may convert a motion to dismiss into a motion for summary judgment, and thus consider the external exhibits and affidavits, when it is "satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings" and the issues involved are "discrete and dispositive."  *Adipar Ltd. v. PLD Int'l Corp.*, No. 01 Civ. 0765, 2002 WL 31740622, at *4 (S.D.N.Y. Dec. 4, 2002).

When a non-moving party is put on notice by the moving papers of its opponent and submits its own exhibits and affidavits in its response papers, it cannot claim to be caught by surprise.  *See Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993); *Adipar*, 2002 WL 31740622, at *4.  Here, both parties treat the motion primarily as one for summary judgment, and both parties seek to have the Court consider statements, documents, and affidavits that were not included in, attached to, or incorporated by the Amended Complaint. (*See* Def.'s Br. 4-5; Pls.' Reply 3)  Plaintiffs, the non-moving party, rely heavily on the Spalluto Affidavits in their response to Defendant's motion.  The First Spalluto Affidavit was attached to the Plaintiffs' Reply Brief, not the Amended Complaint, while the Second Spalluto Affidavit accompanied Plaintiffs' Sur-Reply.[2]  Thus, there is no risk that Plaintiffs will be unfairly surprised by the conversion of this motion into a motion for summary judgment, particularly here, where the Court denies in part Defendant's motion.  *See Kennedy*, 989 F.2d at 592.

Additionally, the issues raised by Defendant are "discrete and dispositive" and therefore

---

[2]Plaintiffs' Sur-reply Memorandum of Law, titled "Plaintiffs' Response to Defendant's Reply Brief," was submitted without the Court's permission.  The Court assumes that Plaintiffs will not repeat such conduct in the future.

5

ripe for summary judgment.  Defendant primarily challenges the standing of both Plaintiffs to sue

under both the ADA and Article III.  Standing is certainly a dispositive issue, as a failure to

adequately plead standing will result in a dismissal for lack of jurisdiction.  *See, e.g.*, *St. Pierre v.*

*Dyer*, 208 F.3d 394, 400 (2d Cir. 2000).  In this instance, it is also discrete.  Courts have refused

to convert a motion to dismiss into a motion for summary judgment where the issues were

"broad," "at the heart of the litigation," and where "there is substantial overlap between the

evidence that is relevant to them and the evidence that would likely be submitted as to other

aspects of the case."  *S.E.C. v. Simonsen*, No. 96 Civ. 9695, 2000 WL 781084, at * 1 (S.D.N.Y.

June 19, 2000).  In *Simonsen*, the court was ruling on both a motion to dismiss and a cross-

motion for summary judgment.  *Id.*  Here, Plaintiffs have not cross-moved for summary

judgment.  Thus, in this case the Court need not decide whether Plaintiffs have standing; the

issue is simply whether or not the allegations in the Amended Complaint and the supporting

affidavits allege sufficient facts to support a jury verdict in Plaintiffs' favor on the question of

standing.  *See R. C. Bigelow, Inc. v. Unilever, N.V.*, 867 F.2d 102, 107 (2d Cir. 1989) ("Simply

stated, in this case we therefore must determine whether plaintiff has raised a genuine issue of

material fact sufficient to show a threat of [injury]." (citing *Brunswick Corp. v. Pueblo Bowl-O-*

*Mat, Inc.*, 429 U.S. 477, 489 (1977))); *accord Cent. Delta Water Agency v. United States*, 306

F.3d 938, 947 (9th Cir. 2002) ("[A]t the summary judgment stage the plaintiffs need not establish

that they in fact have standing, but only that there is a genuine question of material fact as to the

standing elements."); *cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998) (stating

similar proposition in the context of a Federal Rule of Civil Procedure 12(b) motion to dismiss).

This issue is sufficiently discrete for the Court to convert Defendant's Motion into a Motion for

Summary Judgment.  *See Adipar Ltd.*, 2002 WL 31740622, at *4 (holding legal viability of claim and effect of vacatur of order of attachment are discrete and dispositive).

                       2.  Motion for Summary Judgment

       Summary judgment may be granted where it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his or her favor.  *See United Air Lines, Inc. v. Ins. Co. of the State of Pa.*, 439 F.3d 128, 130 (2d Cir. 2006).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  "The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'"  *Id*. (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)).

      B.  Analysis

              1.  Standing

       Defendant argues Plaintiffs lack standing to obtain injunctive relief under the ADA because they have failed to plead concrete, particularized, imminent, and irreparable harm. Plaintiffs face two hurdles:  (1) Plaintiffs' allegations of harm must be sufficiently concrete and imminent to meet the "case or controversy" requirements of Article III section 2 of the

Constitution; and (2) both Plaintiffs must satisfy the statutory standing requirements of the ADA.

### a. Constitutional Standing Requirements

Standing is an essential and unchanging component of the case-or-controversy requirement of Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). There are three well-settled constitutional standing requirements: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) the injury must be likely to be redressed by a favorable decision. *See Field Day, LLC v. County of Suffolk*, No. 05-6445-CV, – F.3d —, 2006 WL 2615241, at *5 (2d Cir. Sept. 12, 2006) (citing *Lujan,* 504 U.S. at 560). A plaintiff's standing is evaluated at the time the complaint is filed. *See Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993). As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *See Field Day*, 2006 WL 2615241, at *5. To defeat a motion for summary judgment, Plaintiffs "must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan*, 504 U.S. at 561). Each element must be proven with the "manner and degree of evidence required" at the given stage of litigation. *See Bldg. & Constr. Trades Council v. Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006). Thus, "at the summary judgment stage the plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements." *Cent. Delta Water Agency*, 306 F.3d at 947; *accord R. C. Bigelow*, 867 F.2d at 107 (noting that a required inquiry regarding summary judgment on the issue of standing is whether plaintiff has raised a genuine issue of material fact regarding the threat of injury (citing *Brunswick*, 429 U.S. at 489)); c*f. Mancuso v.*

8

*Consol. Edison of N.Y.*, 130 F. Supp. 2d 584, 596 (S.D.N.Y. 2001) (granting motion for summary judgment on standing because plaintiff failed to raise a genuine issue of material fact as to any standing element and could not show possibility of redress).

_____Defendant does not contest, at this point, that Spalluto may have faced ADA violations in the form of "architectural barriers" at its property.  Rather, Defendant argues that neither Plaintiff can show evidence of imminent future injury to establish standing for prospective relief.  To establish standing for an injunction, a plaintiff must not merely allege past injury, but also a risk of future harm.  *See Lyons v. City of Los Angeles*, 461 U.S. 95, 101-02, 105 (1983); *see also Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("In order to meet the constitutional minimum of standing to seek injunctive relief, [plaintiff] must carry the burden of establishing that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct." (internal quotations and citations omitted)).

In the context of the ADA, awareness of discriminatory conditions, and the avoidance of a public accommodation because of that awareness, is injury in fact.  *See Disabled in Action*, 2003 WL 1751785, at *7; *see also Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("[O]nce a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.").  This injury continues beyond the initial encounter with discrimination:  "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues."  *Pickern*, 293 F.3d at 1137.   Standing to bring claims for injunctive relief for an ADA claim is established if a plaintiff can "show a plausible intention or desire to return to the place [of the

9

injury] but for the barriers to access."[3]  *Disabled in Action*, 2003 WL 1751785, at *7 (citing

cases).  In contrast, the failure to allege an intention or desire to return to the place where a

plaintiff encountered an ADA violation or merely alleging an intention to return "some day"

merits dismissal.  *See id.* at *7 n.4; *Cortez v. Nat'l Basketball Ass'n*, 960 F. Supp. 113, 118

(W.D.Tex. 1997) (citing *Lujan*).

Plaintiffs have shown a genuine question of material fact as to whether Spalluto has a

plausible intention or desire to return to Trump Tower.  Spalluto, who once lived in New Jersey,

states that he has visited New York City over 15 times in the last three years and, at the time of

his affidavit, had three more trips planned to New York.  (First Spalluto Aff. ¶ 2; Second Aff. of

Peter Spalluto ¶ 3 ("Second Spalluto Aff."))  He maintains personal and family connections in

Northern New Jersey and New York City and conducts business in New York City.  (First

Spalluto Aff. ¶ 3; Second Spalluto Aff. ¶¶ 2-3)  He had visited Trump Tower on trips prior to his

stay at the hotel there on June 22, 2004.  (First Spalluto Aff. ¶ 4)  He also states a definite

intention to return to Trump Tower, to visit the shops and to eat in its restaurants, specifically

Jean Georges.  (*Id.* ¶ 5)  He also admits, however, that one reason he would like to return is to

verify that Trump Tower is in compliance with the ADA, and that, if it is, he would like to stay

again at the hotel.  (*Id.*)

Defendant argues that because Spalluto has failed to provide the exact addresses of his

family or their proximity to Trump Tower, his intentions are speculative.  This argument fails.

---

[3]Under Title III's "futile gesture" provision, Congress has explicitly stated that a disabled
person need not actually return to the place of the injury so long as they have "actual notice that a
person or organization . . . does not intend to comply with Title III of the ADA."  *Disabled in
Action*, 2003 WL 1751785, at *6 (internal quotations omitted).

The statements in Spalluto's affidavits are sufficient to support a factfinder's determination that he has a "plausible intention" to return to Trump Tower and stay at the hotel. *See Disabled in Action*, 2003 WL 1751785, at *7-8. Thus, there is a material issue of fact regarding this element of Spalluto's standing, and summary judgment is inappropriate. *See id.* at *9. Whether or not Spalluto in fact will return to Trump Tower and face discrimination is for the factfinder, not the Court on a summary judgment motion, to decide. Similarly, it will be for the factfinder to determine the veracity of Spalluto's claims.

The cases relied on by Defendant do not hold otherwise. Most of the cases relied on by Defendant for the proposition that Spalluto's statements are insufficient to show an issue of material fact regarding standing have already been considered and rejected by a court in this District. In *Disabled in Action*, Chief Judge Mukasey noted that nearly all the cases that Defendant cites here are cases where courts have found plaintiffs lacked standing because "they have not stated an intention or desire to return to the place where they had previously encountered an ADA violation, or have failed to show a likelihood of discrimination should they return to that place." *Disabled in Action*, 2003 WL 1751785, at *7 n.4.[4] In this case, Spalluto has clearly stated an intention to return to Trump Tower and has provided affidavits to that effect.

Defendant also relies on a series of cases involving the lack of sign language interpreters in hospital emergency rooms. In that line of cases, many courts have held that plaintiffs lack

---

[4] *See Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001) (public accommodation at issue was a county courthouse); *Deck v. Am. Haw. Cruises, Inc.*, 121 F. Supp. 2d 1292, 1299 (D. Haw. 2000) (cruise ship *S. S. Independence*); *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 126 (N.D.N.Y. 2000) (specific Wal-Mart and Sam's Club stores); *DeLil v. El Torito Rests.*, No. C 94-3900, 1997 WL 714866, at *4 (N.D. Cal. June 24, 1997) (restaurant hundreds of miles from plaintiff's home); *Cortez*, 960 F. Supp. at 118 (NBA arena).

standing because they were unlikely to return, let alone had a desire to return, to the same

emergency room for the same emergency care. *See Constance v. State Univ. of N.Y. Health Sci.*

*Ctr.*, 166 F. Supp. 2d 663, 667 (N.D.N.Y. 2001); *Freydel v. N.Y. Hosp.*, No. 97 Civ. 7926, 2000

WL 10264, at *3 (S.D.N.Y. Jan. 4, 2000); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d

830, 833 (D. Md. 1998); *Schroedel v. N.Y. Univ. Med.*, 885 F. Supp. 594, 599 (S.D.N.Y. 1995).

This case, however, is more akin to *Disabled in Action*, where the two plaintiffs were disabled

individuals who used a motorized scooter and a motorized wheelchair for mobility. *Disabled in*

*Action*, 2003 WL 1751785, at *2. They sued Trump Tower for failure to provide wheelchair lift

access to the building in violation of the ADA. *Id.* In their complaint, the plaintiffs stated that

they were New York City residents, that they "enjoy[ed] dining out, patroniz[ed] restaurants in

the neighborhood of [Trump Tower], and desire[d] to dine at [Trump Tower's] restaurants in the

future." *Id.* The plaintiffs alleged, in affidavits, that they had attempted to dine at Jean Georges

restaurant but faced discrimination because Trump Tower was not ADA compliant. *Id.*

Coincidentally (or not), like Plaintiffs here, the plaintiffs in *Disabled in Action* also alleged that

they would return to Jean Georges but for the discrimination they faced. *Id.* at *3-4. Given these

claims, Chief Judge Mukasey held that such intentions to return were "plausible" and that they

had stated "sufficient facts supporting an 'actual injury' to survive summary judgment." *Id.* at

*8-9.

Defendant argues that *Disabled in Action* is materially distinguishable from this case

because Spalluto lives more than a thousand miles from New York City, while the plaintiffs in

that case were New York City residents. Two of the cases cited by Defendant offer tangential

support. In *Rosenkrantz v. Markopolous*, 254 F. Supp. 2d 1250 (M.D.Fla. 2003), the court held a

12

plaintiff did not have a plausible intention to return to the property where he faced discrimination because he lived far from the property and his travel to the area where it was located was "irregular, occasional, and infrequent."  254 F. Supp. 2d at 1253.  In *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368 (M.D. Fla. 2004), the court held a plaintiff did not have standing under the ADA when he lived 280 miles away from the defendant's property (the Best Western Deltona Inn), only traveled to the area once or twice a year, and lacked any "continuing connection" to the property, as he stayed at the hotel "by chance" the first time and had not attempted to return.  331 F. Supp. 2d at 1373.

Here, however, Spalluto does not admit his travel to New York City is infrequent.  He states he travels there multiple times a year.  Spalluto also claims a connection to Trump Tower–he frequents its shops and restaurants, specifically Jean Georges, and hopes to again in the future.  Additionally, unlike the plaintiff's intention to return to the Best Western Deltona Inn in *Brother*, Spalluto's specific intention to return to Trump Tower is plausible.  While the court in *Brother* noted that there were many hotels preferable to the Best Western Deltona Inn in the Orlando area, *id.*, Trump Tower is not so interchangeable.  It boasts one of the best locations in the city, "just steps" from "the most spectacular restaurants, shops and entertainment in the world."  http://www.trumpintl.com/.  Though there are many other fine hotels in New York City (so the Court is told), it is plausible that Spalluto would want to return to Trump Tower, particularly because he evidences a desire to return to Jean Georges, which is located in the building.  (First Spalluto Aff. ¶ 5)  Thus, although Spalluto's statements by no means end the dispute, they are sufficient to show the existence of a question of material fact.  *See Disabled in Action*, 2003 WL 1751785, at *9; *accord Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 89

(E.D.N.Y. 2005) (holding that individual plaintiff pled sufficient facts to establish standing

where he pled knowledge of barriers at specific location and a desire to return but for those

barriers).

<u>b.  ADA Standing Requirements</u>

The ADA grants a private right of action to individuals who are subject to discrimination

"on the basis of disability" or who have "reasonable grounds for believing" they are about to be

subjected to disability-based discrimination.  42 U.S.C. § 12188(a)(1); *see also Disabled in*

*Action*, 2003 WL 1751785, at *4.  Defendant argues that Spalluto has failed to show that he is a

person with a disability within the scope of the ADA's protections.[5]   The ADA defines disability

as "(A) a physical or mental impairment that substantially limits one or more of the major life

activities of such individual; (B) a record of such an impairment; or (C) being regarded as having

such an impairment."  42 U.S.C. § 12102(2).  Courts must engage in a three step analysis to

determine whether a person has a disability: (1) determine whether plaintiff has an impairment;

(2) identify the life activity upon which plaintiff relies and determine whether it constitutes a

"major life activity" within the meaning of the ADA; and (3) ask whether the impairment has

substantially limited that activity.  *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).  "In order to be

eligible to prevail upon a further showing of discrimination, a plaintiff must satisfy each of the

---

[5]Defendant's position on whether Spalluto qualifies as an individual with a disability under the ADA is unclear.  In its Rule 56.1 Statement of Material Fact, Defendant states that it does not dispute that Spalluto qualifies as an individual with a disability.  (Def.'s 56.1 Statement 1)  In its Brief, however, Defendant argues that Spalluto has not produced sufficient facts to show that he is an individual with a disability.  Given Defendant's past encounters with Plaintiffs' counsel, it is not outrageous for Defendant to look at Spalluto's Affidavit with skepticism.  (*See* Begg Aff. Ex. D)  Regardless, the validity of any such allegations is something to be determined at trial, not on a motion for summary judgment.

three prongs." *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998).  Thus,

to defeat Defendant's Motion for Summary Judgment, Plaintiffs must bring forth sufficient

evidence to raise a material question of fact as to whether they have an impairment which

substantially limits a major life activity.

Spalluto has provided sufficient facts to raise a question of material fact as to whether he

is disabled within the meaning of the ADA.  In his Affidavit, Spalluto states "I am a quadriplegic

and use a wheelchair for mobility."  (First Spalluto Aff. ¶ 1)  Walking is a "major life activity."

*Fouad v. Jeport Hotel Corp.*, No. 01 Civ. 8502, 2005 WL 1866329, at *2 (S.D.N.Y. Aug. 5,

2005) (citing 29 C.F.R. § 1630.2(I)); *see also Colwell*, 158 F.3d at 642.  Thus, assuming these

facts are true, as the Court must on a motion for summary judgment, Spalluto has raised

sufficient questions of material fact on the issue of whether he has a "disability" within the

meaning of the ADA.  If Spalluto is in fact a quadriplegic who uses a wheelchair for mobility, a

factfinder could find that he has a physical impairment which substantially limits a major life

activity.[6]

### c.  Associational Standing of Access 4 All

Access 4 All claims it has standing to sue in this action on behalf of its members.[7]  An

---

[6]Plaintiffs assert standing to challenge ADA violations that do not affect Spalluto's personal disability.  For instance, the Amended Complaint alleges that Defendant has violated the ADA because it has failed to provide a sufficient number of guest rooms for persons with hearing impairments.  (Am. Compl. ¶19)  Spalluto has never alleged he is hearing impaired.  Whether or not either Plaintiff has standing to bring claims based on violations of the ADA that do not affect Spalluto's disability is discussed *infra*.

[7]Access 4 All does not claim, and the Court does not consider, that it was directly injured by Trump Tower.  Such an argument is commonly the basis for what is known as "organizational" standing, where an organization sues on its own behalf because of injury it suffered directly, not based on injury to its members.  *See, e.g.*, *Small*, 388 F. Supp. 2d at 90-92.

association has what is known as "representational" standing to sue in its own name on behalf of

its members if (1) its members would otherwise have standing to sue, (2) the interests it seeks to

protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief

requested requires the participation of individual members. *See Hunt v. Wash. State Apple*

*Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Bldg. & Constr. Trades Council*, 448 F.3d at

144. The third prong of the *Hunt* test is not a constitutional requirement, but a matter for

prudential consideration. *See United Food & Commercial Workers Union Local 751 v. Brown*

*Group, Inc.*, 517 U.S. 544, 555 (1996).

Access 4 All meets the first prong of this test. In order to show sufficient injury to sue, an

association need only show that "one or more of its members has suffered a concrete and

particularized injury." *Bldg. & Constr. Trades Council*, 448 F.3d at 145; *see also Warth*, 422

U.S. at 511 ("The association must allege that its members, or any one of them, are suffering

immediate or threatened injury as a result of the challenged action of the sort that would make

out a justiciable case had the members themselves brought suit."); *Southside Fair Hous. Comm.*

*v. City of New York*, 928 F.2d 1336, 1341-42 (2d Cir. 1991) ("An association . . . may have

standing solely as the representative of its members, provided it alleges its members, or any one

of them, are suffering immediate or threatened injury as a result of the challenged action."

(internal quotation marks omitted)). Spalluto is a member of Access 4 All, (Am. Compl. ¶ 12;

First Spalluto Aff. ¶ 6), and, as discussed *supra*, he has produced sufficient facts to defeat

Defendant's Motion for Summary Judgment on the issue of standing related to him. Thus,

Access 4 All has also produced specific facts sufficient to demonstrate that at least one of its

members would have standing to sue.

16

Access 4 All also meets the second prong of the *Hunt* test.  The purpose of Access 4 All is to "represent the interest of its members by assuring places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities."  (Am. Compl. ¶ 11)  In this action, it seeks to represent the interests of a disabled member, Spalluto, which is clearly germane to its purpose.  Thus, the only part of the *Hunt* test at issue here is the third, prudential prong.

The crucial issue is whether the claim asserted, or the relief requested, requires the participation of a member of Access 4 All.  As an initial matter, Access 4 All meets the third prong of the *Hunt* test.  An individual is required to participate when the claim asserted requires "'individualized proof,' such as claims for damages."  *Bldg. & Constr. Trades Council*, 448 F.3d at 150 (quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004)).  When an association seeks a purely legal ruling, "its claims do not require 'individualized proof' . . . [and] [t]he third prong of the *Hunt* test for associational standing is . . . clearly satisfied."  *Id.*  Here, Plaintiffs seek only a declaratory judgment and injunctive relief.[8]  Thus, an individual member of

---

[8]Defendant has argued that, because the scope of a plaintiff's disability determines the scope of the injunctive relief available to a plaintiff under the ADA, all ADA claims require "individualized proof" for the purposes of the *Hunt* test.  (Def.'s Br. 13)  This argument proves too much.  In every case, not just ADA cases, each individual plaintiff must show a particularized harm that gives that plaintiff standing to sue.  If alleging particularized harm for the purposes of standing constituted "individualized proof" then no organization would ever be able to make out a claim of representational standing, as alleging harm to a member is a prerequisite for representational standing.  *See, e.g.*, *Small*, 388 F. Supp. 2d at 99 (noting that representational standing may be substantiated through affidavit of one member alleging specific instance of ADA violation).  This is clearly not supported in the case law, as numerous courts have granted associational standing to groups, like unions, who seek to bring suit on behalf of their members for violations of the ADA.  *See, e.g.*, *Transport Workers Union*, 342 F. Supp. 2d 160, 168 (S.D.N.Y. 2004) (upholding union's associational standing to bring suit for ADA violations).

the association is not required and Access 4 All has met all three prongs of the *Hunt* test.[9]  *See*

*Small*, 388 F. Supp. 2d at 99 (noting that representational standing may be substantiated through

affidavit of one member alleging specific instance of ADA violation).

    That does not end the inquiry.  In addition to the third prong of the *Hunt* test, there are

other prudential limitations on standing.  "Even when a case falls within these constitutional

boundaries, a plaintiff may still lack standing under the prudential principles by which the

judiciary seeks to avoid deciding questions of broad social import where no individual rights

would be vindicated and to limit access to the federal courts to those litigants best suited to assert

a particular claim."  *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979).  There

are three well accepted prudential limitations on standing:  (1) there is no jurisdiction over

generalized grievances; (2) a plaintiff may not rest a claim for relief on the rights of a third party;

and (3) grievances must fall within the zone of interests protected by the relevant statutory

provision.  *See Small*, 388 F. Supp. 2d at 87; *see also LaFleur v. Whitman*, 300 F.3d 256, 269 n.2

(2d Cir. 2002) (noting that a plaintiff may not assert the rights of a third party); *N.Y. State Nat'l*

*Org. for Women v. Terry*, 886 F.2d 1339, 1347 (2d Cir. 1989) ("The prudential limitations on

jurisdiction require that a plaintiff establish that he or she is the proper proponent of the rights

asserted; a litigant may not raise the rights of a third-party, or assert speculative, conjectural or

generalized grievances more appropriately resolved by a governmental body, other than the

courts.").  As a corollary to the second prudential limitation, many courts have declined to

---

    [9]Although it is true, as Defendant argues, that a showing of harm for the purposes of
standing must be concrete and particularized, to hold that this requires a showing of concrete
harm to the association itself, rather than a member, would confuse organizational standing with
associational standing and eliminate the first prong of the *Hunt* test.

recognize the standing of associational ADA plaintiffs when the claims they assert are identical to the individual plaintiffs in the case. *See Disabled in Action*, 2003 WL 1751785, at *10 (dismissing associational plaintiff because its claims were identical to named plaintiffs' and individuals were "better plaintiffs"); *Access 123, Inc. v. Markey's Lobster Pool, Inc.*, No. Civ. 00-382, 2001 WL 920051, at *4 (D.N.H. Aug. 14, 2001) ("In this case, Access 123 is merely repeating the claims brought by Muehe, himself. Muehe appears to be the better party to assert his own claims. Therefore, Access 123 lacks standing to assert claims on Muehe's behalf.").

Access 4 All argues that its claims and interests are not exactly aligned with that of Spalluto. It argues that the 34 ADA violations at Defendant's property listed in the Amended Complaint affect all its members, not just Spalluto, and that the organization is in a better position to enforce Defendant's compliance with the ADA Accessibility Guidelines ("ADAAG") than any individual plaintiff. This may be true, but it overstates the claims that Access 4 All has standing to bring. A plaintiff must have actual knowledge of the barriers to access that he would confront if he were to return to the place where he previously experienced discrimination. *See Pickern*, 293 F.3d at 1138; *Steger v. Franco*, 228 F.3d 889, 892 (8th Cir. 2000); *Disabled in Action*, 2003 WL 1751785, at *6. The logic of this requirement is simple. As discussed *supra*, the injury-in-fact that forms the basis for Plaintiffs' standing has two parts: (1) the direct injury from personally encountering disability-based discrimination at Defendant's property, and (2) deterrence from using Defendant's property because it is not ADA compliant. The basis for Plaintiffs' standing to bring an injunction is that this deterrence constitutes both present and future injury. If members of Access 4 All had no knowledge of specific ADA violations by the Defendant, there would be no basis for them to be deterred from using the property and,

19

therefore, no risk of imminent future injury to them or the organization that represents them.

At oral argument, Plaintiffs' counsel argued that both Plaintiffs have standing to sue Defendant for every violation of the ADAAG at Trump Tower.  In the Amended Complaint, Plaintiffs list 34 different violations.  This list was based on a report prepared by Plaintiffs' expert after an inspection of the building, not after any visit by a member of Access 4 All.  (Pls.' Reply 20)  The inspection was performed approximately one month after Spalluto visited Trump Tower.[10]  Plaintiffs cite a single case for this proposition.  In *Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698 (D. Or. 1997), an organization brought numerous ADA claims on behalf of its disabled members, challenging, among other violations, the wheelchair-accessibility of an arena's luxury suites.  Defendants argued that the plaintiffs did not have standing because they could not show any of their members intended to rent one of the luxury suites.  The court rejected this argument, holding that the plaintiffs had demonstrated an intention to enter at least one luxury suite and that it would be absurd to require 70 different plaintiffs to bring 70 different lawsuits for each of the luxury suites in the arena.  *Id.* at 762.  Up to this point, the Court agrees.  *See Steger*, 228 F.3d at 894; *Pickern*, 293 F.3d at 1138.  However, Plaintiffs argue that *Independent Living* stands for the much broader proposition that any disabled plaintiff may sue for any violation of the ADAAG regardless of whether it affects him or her personally.  *Independent Living* is not so broad.  The court in that case did say that an individual plaintiff in an ADA action represents a class of disabled persons.  *Indep. Living Res.*, 982 F. Supp at 762.

---

[10]The date on the expert's report is Aug. 22, 2003, more than 10 months before Spalluto visited Trump Tower.  (Begg Aff. Ex. C)  Plaintiffs represent that this is merely a typographical error, and that the date should read Aug. 22, 2004.  (Pls.' Reply 20)  For the purposes of this Motion, the Court will assume Plaintiffs' explanation is true.  Regardless, the date on the letter has no effect on the outcome of this Motion.

This proposition is not controversial, as numerous courts have held that individual disabled plaintiffs have standing to challenge all discriminatory conduct that they have knowledge of *and effects their individual disability or disabilities*.  *See, e.g.*, *Steger*, 228 F.3d at 893-94.

   *Independent Living* does not hold, nor could it, that an individual plaintiff represents a class of all persons with any disability, i.e., that a blind person has standing to bring suit for a failure to provide accommodations for the hearing impaired.  To hold otherwise would allow a person who has experienced no injury, and thus has no concrete interest in particular ADA violations, to bring suit on behalf of other plaintiffs who had experienced actual injury.  The injury-in-fact requirement of Article III does not allow for such broad notions of standing.  Plaintiffs only have standing to sue for actual injuries.  *See Lewis*, 518 U.S. at 358, 358 n.6 ("As we have said, [n]or does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." (internal quotations omitted)).  Where the alleged violation does not affect a plaintiff's disability, that plaintiff is not injured and therefore has no standing to bring suit.  *See Steger*, 228 F.3d at 893 ("[Plaintiff] is not 'among the injured' with regard to ADA violations in the building that do not affect the blind, and thus granting him standing to seek relief on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III.").

   Here, there is no evidence in the record that shows that Spalluto, or any other member of Access 4 All, had any knowledge of the 31 additional violations of the ADAAG at the point from which the Court evaluates standing–the time the Complaint was filed.  *See Robidoux*, 987 F.2d at 938.  The expert report on which the list is based was addressed to Plaintiffs' counsel, not any of

21

the Plaintiffs in this action.  That Spalluto or other Access 4 All members knew of these 34

violations when the Complaint was filed, on September 22, 2004, cannot be inferred from the

fact that the Complaint was filed after the date of the inspection.  Standing allegations cannot be

inferred, but must "affirmatively appear in the record." *Thompson*, 15 F.3d at 249 (internal

quotations marks and citations omitted).  Thus, this list of violations, without more, cannot

establish Access 4 All's standing to sue of the 31 ADAAG violations not experienced by

Spalluto.  Rather, Access 4 All's standing is coterminous with that of its members–it may sue for

each ADA violation that it can show was known to and effected a member of Access 4 All.  *See*

*Small*, 388 F. Supp. 2d at 98-99 (holding that in the context of associational standing, the

association's standing is coterminous with that of its injured members).

       In this case, the only injured member of Access 4 All was Spalluto, and the only ADA

violations he knew of at the time of his visit were the lack of a bathroom with sufficient space for

wheelchair entry, the lack of a roll-in shower, and the lack of accessible room controls.  (First

Spalluto Aff. ¶ 4)  Access 4 All is correct that its standing can be greater than that of its

individual members.  For example, if it had provided affidavits from multiple members that

discussed different ADA violations at Trump Tower, Access 4 All may have had standing to sue

on the cumulative violations, regardless of whether any individual member experienced all the

violations.  *Cf. Small*, 388 F. Supp. 2d at 98 ("[B]ecause associational standing exists only

insofar as organization members have standing, associational standing may not be broader or

more extensive than the standing of the organization's members.").  That is not the case here,

however.  Access 4 All has only provided the affidavit of one member, Spalluto.  Thus, Access 4

All's injury is coterminous with the harm to its members, and Spalluto's claims and Access 4

22

All's claims are identical.

Because Access 4 All's claims are identical to Spalluto's, its claims are dismissed. Whether or not Access 4 All has standing is a question of whether this is a case where access to the federal courts should be limited "to those litigants best suited to assert a particular claim." *Gladstone*, 441 U.S. at 100.  In *United Food & Commercial Workers Union Local 751*, the Supreme Court stated "the entire doctrine of 'representational standing,' of which the notion of 'associational standing' is only one strand, rests on the premise that in certain circumstances, particular relationships . . . are sufficient to rebut the background presumption . . . that litigants may not assert the rights of *absent third parties*.  Hence the third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency . . . ."  517 U.S. at 557 (emphasis added).  Here, the relevant third parties are not absent.  Although Access 4 All represents other disabled persons, it has produced no evidence of injury to other disabled persons or Access 4 All members in this case.  Thus, prudential considerations merit removing Access 4 All from this action.

### d.  Vexatious Litigation

Defendant also asks the Court to consider a different prudential matter–that it considers Plaintiffs to be serial ADA plaintiffs engaged in vexatious litigation.  Because of this, it asks the Court to dismiss both Plaintiffs' claims.  Defendant submits docket reports showing that Access 4 All, Spalluto, and Plaintiffs' counsel are engaged in numerous ADA related lawsuits. Defendant's evidence shows that Access 4 All is involved in 427 different ADA related lawsuits, while Spalluto is involved in 97 separate ADA related lawsuits.  Defendant also implies, without stating outright, that Plaintiffs' counsel has manufactured this litigation through fraud for the

purpose of collecting attorneys' fees.  Indeed, at least two courts have dismissed cases for lack of

standing where the named plaintiff was a serial ADA litigant.  *See Rodriguez v. Investco, LLC*,

305 F. Supp. 2d 1278, 1278, 1285 (M.D. Fla. 2004) (plaintiff involved in approximately 200

ADA cases); *Molski v. Mandarin Touch Restaurant*, 347 F. Supp. 2d 860, 861 n.2, 865 (C.D.

Cal. 2004) (plaintiff involved in more than 300 cases).

Based on the current state of the record, the Court is not persuaded that this case is

manufactured.  For example, it comes as no surprise that an organization dedicated to ADA

compliance would be involved in numerous ADA-related lawsuits.  Nor is it inconceivable that a

business traveler might be the victim of disability-based discrimination, and, therefore, an ideal

and frequent ADA plaintiff.  Thus, while the bare-bones claims by Spalluto to date raise some

eyebrows, Spalluto and Access 4 All have produced sufficient facts, at this stage, to allege ADA

violations at Trump Tower and injury from those alleged violations.  That is sufficient to defeat

Defendant's Motion for Summary Judgment on the issue of standing.  Whether discovery and

trial will expose Plaintiffs' case as something less than genuine remains to be seen.  *See*

*Rodriguez*, 305 F. Supp. 2d at 1285 ("At trial, Plaintiff was evasive and willfully ignorant, totally

lacking credibility.  His explanation for his initial visit to the Facility was disingenuous, and he

did not convey any honest desire to return there.  Plaintiff's testimony left the distinct impression

that he is merely a professional pawn in an ongoing scheme to bilk attorneys' fees from the

Defendant.").

### 2.  Intentional Discrimination

Finally, Defendant states that it cannot be held liable for intentional discrimination

because it did not construct Trump Tower.  Discrimination under the ADA can consist of both

24

the failure to accommodate disabled individuals and the failure to remove architectural barriers that limit the disabled's access to a facility. *See* 42 U.S.C. § 12182(b)(2)(A)(i)-(iv). Indeed, the ADA does not apply only to newly constructed buildings. *See* 42 U.S.C. § 12183; *see also Disabled in Action*, 2003 WL 1751785, at *5; *Access Now, Inc. v. S. Fla. Stadium Corp*., 161 F. Supp. 2d 1357, 1368 (S.D. Fla. 2001) (refusing to decide on summary judgment that subsequent purchaser of facility was not liable for violations of the ADAAG).

Defendant cites a single case for its proposition. *Rodriguez*, 305 F. Supp. 2d at 1282. In *Rodriguez*, the Defendant had purchased the non-compliant facility after the filing of the plaintiff's lawsuit and was presently engaged in a renovation, one aspect of which was to make the facility ADA compliant. *Id.* at 1282-84. The court in *Rodriguez* did not hold, as Defendant argues, that purchasers of non-compliant facilities are not liable under the ADA. Instead, the *Rodriguez* court merely held that the defendant had not discriminated against the plaintiff by failing to remove architectural barriers, as it was in the process of doing so. *Id.* ( "Plaintiff has not shown that Defendant failed, despite the ready achievability of doing so, to remove architectural barriers to access. Indeed, the evidence is clearly to the contrary."). That is not the case here. Plaintiffs have brought forth sufficient evidence, at this stage, that there is a material question of fact as to whether Defendant discriminated against the Plaintiffs by failing to provide a roll-in shower, accessible room controls, and acceptable clearance for wheelchair access to the room.

## III.  Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment is DENIED in part and GRANTED in part.

SO ORDERED.

Dated:        October 12, 2006
             New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List:

Lawrence Arthur Fuller, Esq.
Fuller & Fuller & Associates
North Miami, FL
Fax: (305) 893-9505
*Counsel for Plaintiffs*

Mario B. Mikelinich, Esq.
Syossett, NY
Fax: (516) 822-7714
*Counsel for Plaintiffs*

Gregory R. Begg, Esq.
Denis Serkin, Esq.
Peckar & Abramson, P.C.
River Edge, NJ
Fax: (201) 343-6306
*Counsel for Defendant*

Steven Nelson Kirkpatrick
Greenberg Traurig, LLP
Fax: (212) 801-6400
New York, NY