UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACCESS 4 ALL, INC., a Florida not for profit
corporation, and PETER SPALLUTO, individually,

                              Plaintiffs,                    Case No. 04-CV-7497 (KMK)

        -v-                                                  OPINION and ORDER

TRUMP INTERNATIONAL HOTEL AND TOWER
CONDOMINIUM,

                              Defendant.

TRUMP INTERNATIONAL HOTEL & TOWER
CONDOMINIUM,

                              Third-Party Plaintiff,

        -v-

ONE CENTRAL PARK WEST PT ASSOCIATES
LIMITED PARTNERSHIP, PHILIP JOHNSON
RITCHIE & FIORE ARCHITECTS, CK
ARCHITECT, P.C., and CANTOR SEINUK GROUP,
P.C., jointly and severally,

                              Third-Party Defendants.

APPEARANCES:

Gregory R. Begg, Esq.
Denis Serkin, Esq.
Peckar & Abramson, P.C.
River Edge, NJ
*Counsel for Third-Party Plaintiff*

Steven Nelson Kirkpatrick, Esq.
Bryan Clayborne Blair, Esq.
Greenberg Traurig LLP
Santa Monica, CA
*Counsel for Third-Party Defendant One Central Park West PT Associates Limited Partnership*

Scott Kenneth Winikow, Esq.
Zetlin & De Chiara LLP
Westbury, NY
*Counsel for Third-Party Defendant CK Architect, P.C.*

Marc Shea Krieg, Esq.
Krieg Associates, P.C.
Dix Hills, NY
*Counsel for Third-Party Defendant Philip Johnson Ritchie & Fiore Architects*

KENNETH M. KARAS, District Judge:

Third-Party Plaintiff Trump International Hotel & Tower Condominium ("Third-Party Plaintiff" or "Trump") brings this action seeking indemnification for any judgment against Trump in the underlying Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., lawsuit against Trump, and also alleging state law breach of contract, fraudulent misrepresentation, breach of fiduciary duty, breach of special duty, negligence/negligent misrepresentation, and civil conspiracy claims against the Third-Party Defendants in this case. Third-Party Defendants One Central Park West PT Associates Limited Partnership ("CPW" or "Sponsor"), Philip Johnson Ritchie & Fiore Architects ("PJRF"), and CK Architect, P.C. ("CK"), each move to dismiss the action.[1]  For the reasons stated herein, Third-Party Defendants PJRF's and CK's Motions to Dismiss are GRANTED.  Third-Party Defendant CPW's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I.  Background

The following facts are drawn from the Amended Third Party Complaint, and are assumed only for the purposes of this motion to be true.  On February 24, 1993, CPW acquired

---

[1]All claims against Third-Party Defendant Cantor Seinuk Group, P.C., were dismissed voluntarily by Third-Party Plaintiff.

the land and building located at 1 Central Park West, New York, New York, which later became

the Trump International Hotel and Tower.  (Am. Third Party Compl. ¶ 5.)  CPW is the

condominium sponsor of the units in the building, including those owned by Third-Party

Plaintiff.[2]  (*Id.* ¶ 1.)  After purchase, CPW planned to renovate parts of the property, a project

that required extensive construction.  In the Condominium Offering Plan ("Offering Plan"), dated

April 10, 1996, CPW promised to perform any work required to complete the construction in

accordance with plans filed with the New York City Department of Buildings ("DOB").[3]  (*Id.*

¶ 6.)  To prepare plans necessary for the construction, CPW hired PJRF and CK, two architecture

firms.  (*Id.* ¶ 7.)  Third-Party Plaintiff alleges that in the Offering Plan CK certified that the

construction was done in compliance with the plans submitted to the DOB and that the Offering

Plan did not omit any material facts, did not contain any untrue statements of material fact, fraud,

deception, concealment, or falsehoods.  (*Id.* ¶¶ 8-10.)  Third-Party Plaintiff also alleges that CPW

has remained involved in the building construction-related affairs of Third-Party Plaintiff since

approximately 1997.  (*Id.* ¶¶ 11-12.)  In fact, in March 2003, CPW agreed in writing to assume

some responsibility for ADA-related claims against Third-Party Plaintiff ("2003 Agreement").

(*Id.* ¶ 14.)

   Plaintiff filed the underlying action in this case on September 22, 2004.  Defendant/Third-

_____

   [2]The Amended Third Party Complaint is sparse when it comes to describing the business relationships between the Third-Party Plaintiff and the Third-Party Defendants.  For instance, any explanation of the role of CPW as "sponsor" of Third-Party Plaintiff is notably lacking.

   [3]It is not clear from the face of the Amended Third Party Complaint that this constituted an implied promise to perform work in compliance with the ADA.  However, as the Parties do not, at this stage, press the point, the Court will construe the Amended Third Party Complaint liberally in Third-Party Plaintiff's favor.

Party Plaintiff filed the Third Party Complaint on May 18, 2005.  It filed the Amended Third

Party Complaint on December 28, 2005.  The claims against Third-Party Defendant Cantor

Seinuk Group were voluntarily dismissed, and each remaining Third-Party Defendant moved to

dismiss the Amended Third Party Complaint in its entirety.

## II.  Discussion

### A.  Standard of Review

All Third-Party Defendants in this action bring Motions to Dismiss under Federal Rule of

Civil Procedure 12(b)(6).  "The function of a motion to dismiss 'is merely to assess the legal

feasibility of the complaint . . . .'"  *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities Inc.*,

748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.

1980)).  Thus, the motion should not be granted unless it appears "clear" that Plaintiff can prove

no set of facts in support of the claim which would entitle Plaintiff to relief consistent with the

allegations in the Complaint.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)

(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Weizmann Inst. of Sci. v. Neschis*,

229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002).  Review of such a motion requires the Court to

accept as true Third-Party Plaintiff's allegations in the Amended Third Party Complaint, and

draw all inferences in favor of Third-Party Plaintiff.  *See Mills v. Polar Molecular Corp.*, 12 F.3d

1170, 1174 (2d Cir. 1993); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71

(S.D.N.Y. 2005).  The Court is not concerned with weighing the evidence which would be

presented at trial.  *See Chosun Int'l Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir.

2005).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to

4

facts stated on the face of the complaint, in documents appended to the complaint or incorporated

in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard*

*F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. West Point-*

*Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).  However, a court may consider public records*,*

*Tornheim v. Eason*, 363 F. Supp. 2d 674, 676 (S.D.N.Y. 2005), as well as documents alleged or

referenced in, but not attached to, the complaint.  *See Cortec Indus., Inc. v. Sum Holding, L.P.*,

949 F.2d 42, 47-48 (2d Cir. 1991) (allowing defendant to produce a prospectus with its motion to

dismiss which plaintiff failed to attach to the complaint); *2 Broadway LLC v. Credit Suisse First*

*Boston Mortgage Capital LLC*, No. 00 Civ. 5773, 2001 WL 410074, at *5 (S.D.N.Y. Apr. 23,

2001).

      B.  Collateral Estoppel

      On May 24, 2006, the Honorable Richard J. Holwell decided the motions to dismiss in

*Disabled in Action of Metropolitan, New York v. Trump International Hotel & Tower*, No. 01

Civ. 5518, brought by the same Third-Party Defendants here.  That case involved a separate

ADA lawsuit against Third-Party Plaintiff.  In that case, as here, Trump filed a third-party

complaint against CPW, PJRF, and CK.  It asserted claims identical to those Trump asserts in the

Amended Third Party Complaint here, namely indemnification for any sums that it would pay for

alleged violations of the ADA, as well as breach of contract claims (for an alleged failure to

abide by representations made in the 1996 Offering Plan and the alleged 2003 Agreement to

indemnify Third-Party Plaintiff for any ADA related expenses), fraud, breach of fiduciary duty,

breach of special duty, negligence/negligent misrepresentation, and civil conspiracy.  In *Disabled*

*in Action*, Judge Holwell dismissed all of Third-Party Plaintiff's claims except for the two

5

contract claims against CPW.  Third-Party Defendants argue that the doctrine of collateral

estoppel, or issue preclusion, bars Third-Party Plaintiff from re-litigating the same issues in this

Court.  The Court agrees.[4]

Initially, the Court must determine which law to apply.  Though the Parties did not

specifically address the issue, Third-Party Plaintiff relies on federal law in its papers, while

Third-Party Defendants rely on New York law.  In the Second Circuit, a federal court that is

determining the preclusive effect of a prior federal question judgment must apply federal law.

*See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 41-42 (2d Cir. 1986) ("A state court must apply

federal law to determine the preclusive effect of a prior federal question judgment.  It follows as

a matter of course that a federal court should apply federal law in such circumstances."  (internal

citations omitted)).  However, a "federal court sitting in diversity or adjudicating state law claims

that are pendent to a federal claim must apply the choice of law rules of the forum state." *Rogers*

*v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *see also Republic of Ecuador v. ChevronTexaco*

*Corp.*, 376 F. Supp. 2d 334, 350 (S.D.N.Y. 2005) (applying federal choice of law rules to claims

based on federal question jurisdiction and state choice of law rules to claims based on

supplemental jurisdiction); *Weizmann*, 229 F. Supp. 2d at 249 (applying state choice of law rules

to claims over which the court had supplemental jurisdiction).  Thus, which law to apply depends

on the jurisdictional basis for the claims in the Amended Third Party Complaint.

---

[4]Third-Party Defendant CPW also alleged that Third-Party Plaintiff's claims are barred by
the doctrine of res judicata, or claim preclusion.  However, when the Third-Party Defendants
requested additional briefing to address the preclusion issues triggered by Judge Holwell's
decision in *Disabled in Action*, they treated the issue as solely one of collateral estoppel.  As the
Parties primarily treated the issue as one of issue preclusion, and that question is decisive on all
the claims discussed herein, there is no need for the Court to address the question of res judicata.

The claims asserted in the Amended Third Party Complaint all arise out of the common law of New York, but they are cognizable in this Court under the supplemental jurisdiction of the federal courts because they are related to the original ADA action, which raises a federal question.  *See* 28 U.S.C. 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  Thus, the choice of law rules of New York must be applied.  *See Rogers*, 875 F.2d at 1002 (applying state choice of law rules where federal court is exercising supplemental jurisdiction).

"In New York . . . the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws.  It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (internal citations omitted).  An actual conflict exists when (1) the substantive legal standards in the two areas of law differ, (2) the difference is relevant to the issue at hand, and (3) the issue could possibly have a significant effect at trial.  *See Fin. One Public Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005).  Here, the Parties do not allege a conflict between New York collateral estoppel law and federal collateral estoppel law, nor is the Court aware of a difference that would meet the criteria set out in *Finance One*.  *See M.J. Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 580 (S.D.N.Y. 2003) ("The doctrine of collateral estoppel – also known as issue preclusion – operates almost identically under federal and New York State law . . . .").  When no conflict exists, New York courts apply New York law.  *See J. Aron & Co. v. Chown*, 647 N.Y.S.2d 8, 8

(App. Div. 1996) (forgoing choice of law analysis and applying New York law where no actual conflict of law existed); *see also @Wireless Enters. v. AI Consulting, LLC*, No. 05 Civ. 6176, 2006 WL 3370696, at *4 (W.D.N.Y. Oct. 30, 2006) (no choice of law analysis required when there is no actual conflict of laws). Thus, the Court will apply the law of the forum state under whose law the common law causes of action in the Amended Third Party Complaint arise – New York State.

"Under New York law, collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.'" *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (quoting *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 490 (N.Y. 1984)). The doctrine of collateral estoppel exists to preserve judicial resources and "is grounded on the premise that once a person has been afforded a full and fair opportunity to litigate a particular issue, that person may not be permitted to do so again." *Gramatan Home Investors Corp. v. Lopez*, 386 N.E.2d 1328, 1331 (N.Y. 1979); *see also Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993) ("While premised on notions of due process and fairness, the doctrine also acts to conserve the resources of courts and litigants, reduce inconsistent results, and promote the interest in finality of judgments."). However, "collateral estoppel is a flexible, equitable doctrine that requires a case-by-case analysis of the facts and realities of a particular litigation, and should not be rigidly or mechanically applied." *White v. Frize*, 827 N.Y.S.2d 302, 304 (App. Div. 2006).

New York courts apply collateral estoppel to the final judgments of other tribunals when: (1) the issue in the second action was identical to an issue that was raised, necessarily decided,

and material in the first action; (2) the parties had a full and fair opportunity to litigate the issue;

and (3) the issue is decisive in the present action. *See LaFleur*, 300 F.3d at 271. Third-Party

Plaintiff does not contest the second and third factors, nor does it allege that the Amended Third

Party Complaint in this case or the facts alleged therein are materially different than the issues

raised in the amended third party complaint in *Disabled in Action* and decided in that case.[5]

---

[5]Though Third-Party Plaintiff did not make any arguments regarding the second prong – full and fair opportunity to litigate the issue – the Court has considered whether that prong has been satisfied here. Collateral estoppel applies only to final orders. For the purposes of res judicata and collateral estoppel, a dismissal because of a failure to state a claim is a final order, as it is a decision on the merits. *See Sabatino v. Capco Trading, Inc.*, 813 N.Y.S.2d 237, 238 (App. Div. 2006); *Faggiano v. Eastman Kodak Co.*, 378 F. Supp. 2d 292, 301 (W.D.N.Y. 2005) ("The Second Circuit has held that judgments under Rule 12(b)(6) are on the merits, with res judicata effects." (internal quotations and citations omitted)); *Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003) (noting that dismissals pursuant to Rule 12(b)(6) are final orders). Although Third-Party Plaintiff filed a Notice of Appeal of Judge Holwell's May 24, 2006 Order (which Judge Holwell did not certify for appeal and which Third-Party Plaintiff later withdrew without prejudice), the majority view in New York is that even the possibility of appeal from a final order does not alter the collateral estoppel effect of that order under New York law. *See Anonymous v. Dobbs Ferry Union Free Sch. Dist.*, 797 N.Y.S.2d 120, 121 (App. Div. 2005) ("The rule in New York is that the 'pendency of an appeal does not prevent the use of the challenged judgment as the basis of' collateral estoppel." (quoting *In re Amica Mut. Ins. Co.*, 445 N.Y.S.2d 820, 822 (App. Div. 1981))); *Bridgeview Garden Apartments, LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*, No. 8157/04, 2004 WL 2059552, at *6 (N.Y. Sup. Ct. Sept. 9, 2004); *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) ("Under New York law, the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." (internal quotations and citations omitted)). Judge Holwell refused to certify Trump's appeal in that action. *Disabled in Action of Metropolitan, New York v. Trump International Hotel & Tower*, No. 01 Civ. 5518 (S.D.N.Y. Oct. 10, 2006) (memo endorsed letter denying certification of issue for appeal) (Doc. No. 112). Thus, while Trump has not forfeited its right to appeal the dismissal ordered by Judge Holwell, no appeal is currently pending in that case. Were that situation to change, however, the analysis here would not.

A minority of New York courts, primarily the New York Surrogate's Court, holds that a court should consider a pending appeal when determining whether a party has received a "full and fair" opportunity to litigate a claim. *See In re Estate of Alexis*, 823 N.Y.S.2d 886, 889-90 (Sur. Ct. 2006) (citing *Duverney v. State of New York*, 410 N.Y.S.2d 237 (Ct. Cl. 1978) and *Read v. Sacco*, 375 N.Y.S.2d 371 (Sup. Ct. 1975)); *Estate of Brown*, 503 N.Y.S.2d 532, 533 (Sur. Ct. 1986). However, federal courts typically follow the majority rule when applying New York law,

Rather, Third-Party Plaintiff argues that the issues in this case differ from the matter before Judge Holwell because the underlying ADA action arose out of a different set of facts.

Third-Party Plaintiff cites only two cases to support its position, but neither is analogous to the present case.  In *Mead v. Schaub*, 757 F. Supp. 319 (S.D.N.Y. 1991), the court held that a plaintiff was estopped from re-litigating a claim which had already been determined in a separate state court action, but noted that the plaintiff could continue to argue additional causes of action that had not been raised in the state court proceeding.  757 F. Supp. at 321 n.3.  Here, the causes of action raised are identical, and, although the underlying ADA claim is different, the facts alleged in connection with the Third-Party claims are identical to the previous action.  Thus, this situation is closer to the claim that the court in *Mead* held was estopped, rather than the numerous new causes of action that it allowed to proceed.  *See id.*

The second case cited by Third-Party Plaintiff, *Lafferty v. Brogden*, 486 N.Y.S.2d 644, 647 (Fam. Ct. 1985), is also inapposite.  In *Lafferty*, the court considered how to interpret a statute relating to child support.  In particular, the court discussed the effect of collateral estoppel on one proposed interpretation of the statute, but the issue of collateral estoppel itself was neither raised nor decided by the court.  Regardless, the premise put forth by the *Lafferty* court is

---

*see, e.g.*, *Disorbo*, 343 F.3d at 183, and this is also the rule under federal law.  *See Straus v. Am. Publishers' Ass'n*, 201 F. 306, 310 (2d Cir. 1912); *In re Adelphia Commc'ns Corp.*, No. 03 MD 1529, No. 03 Civ 5750, No. 03 Civ. 5751, 2006 WL 2463355, at *4 (S.D.N.Y. Aug. 23, 2006); 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 4433 (2d Ed. 2006) ("The bare act of taking an appeal is no more effective to defeat preclusion than a failure to appeal.  The Supreme Court long ago seemed to establish the rule that a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo.  The lower courts have taken the rule as settled ever since." (footnote omitted)).  The Court will do the same here and follow the majority view.

irrelevant to the present action.  In *Lafferty*, the court stated simply that two causes of action may arise out of a similar set of facts, and a decision on one does not preclude the other.  *Id.* at 647. This is hornbook law.  Here, however, Third-Party Plaintiff has not alleged that any fact *relevant* to the Third-Party claims differs from the motion decided by Judge Holwell.  Nor has it even attempted to distinguish the Third-Party claims here from those in *Disabled in Action*.[6]

When a Third-Party Plaintiff asserts identical causes of action against identical Third-Party Defendants, and the relevant facts that form the basis of the Third-Party action are identical, the principles behind the doctrine of collateral estoppel merit its application.  Initially, it must be noted that, when collateral estoppel is raised as a defense, there often will be some factual differences between the claim that was litigated and the claim asserted in the later litigation.  *See, e.g., Berlitz Schs. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215-16 (2d Cir. 1980) (holding that factual differences were "not so great as to warrant another judicial proceeding"); *Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 546-47

---

[6]There is one difference worth noting, however.  The New York statute of limitations on fraud claims is six years from the date of the fraud or two years from the date the fraud reasonably could have been discovered, whichever is longer.  *See Scherer v. Gaildon Med. Sys.*, No. 02 Civ. 8847, 2004 WL 2884312, at *3 (S.D.N.Y. Dec. 10, 2004).  In the case before Judge Holwell, the allegedly fraudulent statements were made in 1997, and the date of reasonable discovery was in 2001, when the underlying Plaintiffs sued Trump.  As the third party complaint in that case was served in 2005, the fraud claims were both well outside the statute of limitations, as Judge Holwell noted.   Here, however, the date when the fraud reasonably could have been discovered was in 2004, the date where the underlying Plaintiffs in this action sued.  The Third Party Complaint was served in 2005, within the two-year statute of limitations.  This does not help Third-Party Plaintiff, however, as Judge Holwell dismissed its fraud claims on three distinct grounds, only one of which was the statute of limitations.  Judge Holwell also held that Third-Party Plaintiff had failed to plead fraud with particularity and that its fraud claims were in fact breach of contract claims, not fraud claims.  Thus, even if this Court were not bound by Judge Holwell's decision on the statute of limitations, it would still be bound by the principles of collateral estoppel to adopt his decision on these other two grounds.

11

(S.D.N.Y. 2001) (noting factual differences between prior and later actions but holding that collateral estoppel barred later claim because "plaintiffs stand in all essential respects in exactly the same position as the primary plaintiff" in the prior litigation).  That said, however, there are (with the one exception noted above) virtually no relevant facts that differ between this action and the *Disabled in Action* case.  The Amended Third Party Complaints in each case are, other than the caption, virtually identical.  The only difference is that a different ADA claim underlies each action, a fact not mentioned in either Amended Third Party Complaint.  Even so, the underlying ADA claim is not material to the substance of the Third-Party claims, as it only affects the issues of jurisdiction and damages.  Put another way, the basis for liability in both Third Party Complaints is the fact that Trump is alleged not to be ADA compliant.  The specific ADA violations alleged in the two complaints are irrelevant.  The claims raised in the Amended Third Party Complaint are all common-law contract and tort actions based on the agreements and actions of the Third Parties, not the underlying Plaintiffs.  Indeed, it is telling that the Amended Third Party Complaint does not even make reference to the underlying Plaintiffs.  To that end, these issues were all litigated in the action before Judge Holwell.  The purpose of collateral estoppel is to "conserve the resources of courts and litigants, reduce inconsistent results, and promote the interest in finality of judgments."  *See Conte*, 996 F.2d at 1400.  None of these interests would be served by allowing Third-Party Plaintiff to relitigate its claims against the Third-Party Defendants.  Thus, the doctrine of collateral estoppel requires the dismissal of all eight causes of action against CK and PJRF, and all but the two contract claims against CPW. *See Sabatino*, 813 N.Y.S.2d at 238-39 (estopping party in Third-Party action where prior claims

were similar to claims in later action).[7]

However, what is good for the goose is good for the gander.  Third-Party Defendant CPW alleges that the two remaining claims against it are time-barred.  Judge Holwell ruled, however, that these arguments were "not issues that can be resolved on a motion to dismiss."  (Hr'g Tr. 34:1-2, May 24, 2006.)  Thus, CPW's motion to dismiss counts two and three of the Amended Third Party Complaint is denied on collateral estoppel grounds.

C.  The Merits

Even if the Court were to consider the merits of the Third-Party Defendants' motions, the Court is in substantial agreement with Judge Holwell.  When asked at oral argument, Third-Party Plaintiff focused on two primary disagreements with Judge Holwell's decision.  First, Third-Party Plaintiff argued that there is a common-law right to indemnity under the ADA.  Second, it argued that the statute of limitations on design professionals under New York law is measured from the date of injury, rather than from the date of completion.  The Court agrees with Judge Holwell on both issues.

Third-Party Plaintiff argues that the principles of fairness and equity which underlie common-law indemnity claims require indemnification in this case.  Neither the Supreme Court

---

[7]There is a separate line of cases which holds that a ruling on a pure issue of law is not entitled to collateral estoppel.  *See Am. Home Assurance Co. v. Int'l Ins. Co.*, 684 N.E.2d 14, 16 (N.Y. 1997).  The Court of Appeals in *Gramatan*, however, stated that "[c]ollateral estoppel is a corollary to the doctrine of Res judicata [sic]; it permits in certain situations the determination of an issue of fact *or law* raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided."  386 N.E.2d at 1331 (emphasis added).  As Third-Party Plaintiff has not raised this argument, however, and there has been no briefing on what issues in this case may be considered "pure issues of law," it is not properly before the Court and need not be decided.  *See Chrisnav Yachting, Ltd. v. Lloyd's Underwriters*, No. 05 Civ. 6609, 2006 WL 3461967, at *6 n.12 (S.D.N.Y. Nov. 30, 2006) (refusing to consider argument not raised by the parties).

nor the Second Circuit has addressed the question of indemnification under the ADA, but the

Supreme Court has addressed the issue of contribution under Title VII.  *See Northwest Airlines,*

*Inc. v. Transport Workers Union of America*, 451 U.S. 77 (1981).  In *Northwest Airlines*, the

Supreme Court held that Title VII did not grant a right to contribution.  The Court held that there

were two ways such a right could be created.  *See id.* at 90.  It could have been created by the

language of the statute, either expressly or implicitly, or it could arise out of the federal common

law as an exercise of "judicial power to fashion appropriate remedies for unlawful conduct."  *Id.*

Third-Party Plaintiff does not argue that the text of the ADA creates a right to indemnity.[8]

Instead, Third-Party Plaintiff argues that the Court should establish a right to indemnity under the

ADA as part of the common law.  Although Third-Party Plaintiff makes no distinction as to

whether this alleged right arises out of the federal common law or the law of New York, neither

body of law provides Third-Party Plaintiff a right to indemnity under the ADA.

        Third-Party Plaintiff cites no authority for the proposition that the common law of New

York, or federal common law, provides a right to indemnity under the ADA.  Plaintiff cites one

---

        [8]This is wise, as the courts that have considered that argument, including Judge Holwell,
have rejected it.  There is no express right to indemnity in the ADA, and the fact that the ADA
has a comprehensive remedial scheme and that owners of non-compliant properties are not
members of the class that the statute was intended to protect argue against reading any implied
right of indemnification into the statute.  *See Northwest Airlines*, 451 U.S. at 92-94 (holding no
implied right to contribution in Title VII where plaintiff was not a member of the class the statute
was designed to protect and Congress had created a broad remedial scheme that did not include a
right to indemnity); *Herman v. RSR Security Servs. Ltd.*, 172 F.3d 132, 143-44 (2d Cir. 1999)
(holding no right to indemnity or contribution under the Fair Labor Standards Act where plaintiff
was not a member of a class the statute was designed to protect and the statute had a
comprehensive remedial scheme that did not include contribution or indemnity); *Rodriguez v.
Gary Plastic Packaging Corp.*, No. 95 Civ. 4900, 1997 WL 16665, at *3 (S.D.N.Y. Jan. 16,
1997) ("The ADA's enforcement mechanisms were modeled after and are identical to those of
Title VII.").

case, *Frotton v. Barkan*, 219 F.R.D 31 (D. Mass. 2003), for the proposition that courts have recognized such a right.  However, that case is inapposite.  In *Frotton*, the plaintiffs sought to amend their complaint to bring claims under the ADA against the owner of a shopping complex for the ADA violations of the retail tenants.  219 F.R.D. at 31.  The court held that the landlord has an independent obligation to make its facilities ADA compliant, and that it could be sued for the ADA violations of the tenants.  *Id.*  The court also held that this obligation was non-delegable, and could not be eliminated by contract.  *Id.*  It did say, however, that, if sued for ADA violations of the tenants, "[t]he landlord can in turn seek indemnification from the tenant pursuant to their lease agreement."  *Id.*  Thus, *Frotton* merely stands for the uncontroversial proposition that landlords may seek to recoup their liability for the ADA violations of their tenants via contract, which the Third-Party Plaintiff seeks to do in this case through counts two and three of the Amended Third Party Complaint.  It speaks not at all to the existence of a common-law right to indemnification under the ADA.

The majority of federal case law counsels against creating any federal common-law rights of indemnity or contribution in areas where Congress has created comprehensive legislative remedies.  In *Northwest Airlines*, where the Supreme Court declined to find a common-law right to contribution under Title VII, the Court noted,

> The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.  Both the Equal Pay Act and Title VII of the Civil Rights Act of 1964 are such statutes.  The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs.

451 U.S. at 97.  The Second Circuit came to a similar conclusion when evaluating the Fair Labor

Standards Act, noting that "[s]uch a comprehensive statute strongly counsels against judicially

engrafting additional remedies."  *Herman*, 172 F.3d at 144.  As the ADA is also a statute with a

legislatively mandated remedial scheme that mirrors that of Title VII, *see Rodriguez*, 1997 WL

16665, at *3, it follows that this Court should not engraft a judicial remedy of indemnification

where one has been omitted by the legislature.[9]

      Finally, even if Third-Party Plaintiff is attempting to claim that the common law of New

York gives rise to a right to indemnity under the ADA, this argument also fails.  First, Third-

Party Plaintiff cites to no New York law that supports a right to indemnity where the underlying

Plaintiff seeks equitable relief, and the Court is aware of none.  The traditional common-law rule

is that there is no such right.  *See In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 209 F.R.D.

323, 346 n.38 (S.D.N.Y. 2002).  Where, as here, a plaintiff seeks injunctive relief, "[e]quitable

remedies may not be passed on to other alleged wrongdoers in the manner that damages can be

passed on to joint tortfeasors or indemnitors by way of contribution or indemnification."

*Moreland v. Behl*, No. C-91-1238, 1995 WL 150579, at *4 (N.D. Cal., Mar. 22, 1995); *see also*

*Framingham Union Hosp., Inc. v. Travelers Ins. Co.*, 744 F. Supp. 29, 33 (D. Mass.1990) ("[A]

defendant's liability for his own ill-gotten gains cannot be shifted, even to one more culpable.").

Additionally, even if Plaintiff had authority that such a right might exist in New York common

law, it would raise the specter that any state-law right to indemnity would be pre-empted by the

extensive remedial scheme of the ADA.  *Cf. Herman*, 172 F.3d at 144 ("Yet, even if the FLSA

---

      [9]In addition, to the extent that it is relevant, Third-Party Plaintiff points to nothing in the
legislative history of the ADA that contradicts this conclusion.  *Cf. Herman*, 172 F.3d at 144
(noting that silence of legislative history of the FLSA undercuts indemnification claim).

does not authorize contribution or indemnification, appellant declares these claims may nonetheless be prosecuted under New York law.  This view of the law is flawed because the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law in this respect."). Lastly, federal courts accept state-law rights of contribution or indemnity only where state law provides the rule of decision.[10]  *See id.* (quoting *Northwest Airlines*, 451 U.S. at 97 n.38).  As this claim arises under a federal statute, the ADA, federal law provides the rule of decision, and, as discussed above, there is no federal common-law right to indemnification under the ADA.

At oral argument, Third-Party Plaintiff also challenged Judge Holwell's decision that the statute of limitations for a negligence action against an architect by a subsequent purchaser of a building accrues at the date of completion instead of the date of injury.[11]  The fundamental dispute between the parties is over the characterization of the injury.  Third-Party Defendants argue that Third-Party Plaintiff's claim is functionally one of professional malpractice – that Third-Party Defendants negligently failed to design the building in compliance with the ADA. Under New York law, a negligence action against an architect for professional malpractice brought by a party with no prior relationship to the architect accrues at the time the architect

---

[10]Although *Northwest Airlines* only addressed a contribution claim, its rationale applies equally to claims for indemnity.  *See Anderson v. Local Union No. 3*, 582 F. Supp. 627, 633 (S.D.N.Y. 1984) ("Although the Supreme Court in *Northwest Airlines* addressed itself only to claims for contribution, we assume that the rationale of that case would equally bar claims for indemnity.").

[11]Third-Party Plaintiff's alleged injury is that it was sued by a disabled person as an owner of facilities that allegedly discriminate against the disabled.  The Court assumes, without deciding, that such a lawsuit is cognizable injury that may serve as the basis of a negligence action under New York law.

"wrongfully put into motion forces which caused the injury."[12]  *Bd. of Managers of Yardarm Beach Condo. v. Vector Yardarm Corp.*, 487 N.Y.S.2d 17, 19 (App. Div. 1985).  That date is upon completion of the building or the date where the allegedly injured party relied on the defective plans.  *See id.* ("[Plaintiff's] cause of action against [defendant] accrued when [defendant] wrongfully put into motion forces which caused the injury and when his liability for the injury arose, i.e. upon his completion of the building."); *see also IFD Constr. Corp. v. Corddry Carpenter Dietz & Zack*, 685 N.Y.S.2d 670, 672 (App. Div. 1999) ("Here, the gravamen of the wrong complained of is that [plaintiff relied] on documents and specifications prepared by the defendant engineers, who negligently misrepresented [the condition of the project site].  Thus, [plaintiff] was injured when the forces alleged to have produced that injury were put in motion, that is, at least by the time [plaintiff relied on the documents]."); *Gelwicks v. Campbell*, 684 N.Y.S.2d 264, 265 (App. Div. 1999) (holding that cause of action by subsequent purchaser against engineer that certified a septic system as properly constructed accrued at date of certification, not discovery).

Third-Party Plaintiff, on the other hand, construes its action as a personal injury action against the negligent architect, which accrues upon the date of alleged personal injury.  In *Cubito v. Kreisberg*, 419 N.Y.S.2d 578 (App. Div. 1979), the court held that in an action for personal injury due to negligence, the cause of action "accrues when the invasion of the plaintiff's personal rights occurred . . . unless we are required by reasons of compelling public policy to find

---

[12]Third-Party Plaintiff also disagreed with Judge Holwell's finding that even if its negligence claim was within the statute of limitations, it would be still be barred by New York's economic loss rule.  As the Court agrees with Judge Holwell that this action was commenced outside of the applicable statute of limitations period, there is no need to reconsider Judge Holwell's determination regarding New York's economic loss rule.

that the cause of action accrued when the architect prepared the plans and found the building to have been completed according to the plans." 419 N.Y.S.2d at 582.  Third-Party Defendants are closer to the mark.

The negligence claim in the Amended Third Party Complaint, count seven, is a professional malpractice claim.  Third-Party Plaintiff alleges that Third-Party Defendants

> had a duty to [Third-Party Plaintiff] to assure that the Building is designed and constructed in compliance with the accessibility laws alleged in the [underlying] Complaint.  40.  The defendants were aware that [Third-Party Plaintiff] would rely on their statements regarding the compliance of the Building with all codes and regulations when purchasing the Building.  41.  [Third-Party Plaintiff] did reasonably and detrimentally rely reasonably [sic] on the defendants' misrepresentations in purchasing the Building.

(Am. Third Party Compl. ¶¶ 39-41.)  Were this a personal injury claim, Third-Party Plaintiff would have alleged some type of injury in the pleadings.  However, Third-Party Plaintiff only claims to have detrimentally relied on Third-Party Defendants' improperly prepared plans.  Such an allegation is more akin to one of professional malpractice than personal injury.  Even if Third-Party Plaintiff were alleging that it was itself injured by the non-compliant facility, that injury is entirely different from that alleged in *Cubito*.

In *Cubito*, the plaintiff was a tenant who slipped and fell in a puddle in the laundry room of her apartment building.  She sued the architects for negligently designing the laundry room in such a way that water collected on the floor, thereby causing plaintiff's injuries.  419 N.Y.S.2d at 579.  Here, Third-Party Defendants have not been sued by the Plaintiff in this case.  Rather, Plaintiff sued Third-Party Plaintiff, alleging that it owned facilities that discriminated against the disabled, and seeking equitable relief to enjoin the violations of federal anti-discrimination laws

and to fix the allegedly discriminatory facilities.  Third-Party Plaintiff then sued Third-Party

Defendants to pass on to Third-Party Defendants the responsibility for the allegedly ADA-based

deficiencies of the building.  Thus, Third-Party Plaintiff's injury is not the result of a slip and

fall, nor did it suffer any discrimination, rather Third-Party Plaintiff's injury is that it was

subjected to legal liability under federal anti-discrimination laws due to its ownership and

operation of an allegedly non-ADA compliant building.  Such an injury is much closer to an

assertion of professional malpractice for negligent design and construction then a personal injury

claim.  *See Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 493 (S.D.N.Y.

2001) (interpreting non-personal injury claim against architects as one of professional

malpractice rather than negligence).[13]

 Thus, the Court concurs with Judge Holwell that Third-Party Plaintiff's negligence

claim against the architect Third-Party Defendants accrued at the time the architects' work was

completed.  The Parties agree that work on the building was completed at some point in 1997.

As such, Third-Party Plaintiff's negligence claims are barred by the statute of limitations.  Third-

Party Plaintiff also briefed a number of other issues in its papers, though these were not a focus

of oral argument.  The Court has considered these claims, but they are rejected for the reasons

---

[13]Even if Third-Party Plaintiff's claim fell within the *Cubito* rule, *Cubito* allows for a reason of "compelling public policy" to justify finding that a negligence action accrues when an architect prepares plans for a building.  419 N.Y.S.2d at 582.  Under Third-Party Plaintiff's theory of the statute of limitations, a building owner would have three years from the commencement of an ADA lawsuit against it to sue the architect that designed the building. Such a rule would make architects perpetually liable *to owners* for any non-ADA compliant structure within the building.  This would eliminate the incentive for owners to bring their structures into compliance with the ADA unless they are sued, and thereby frustrate Congress's purpose "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).

given by Judge Holwell. There is no need to further burden the record by repeating Judge Holwell's analysis here.

### III. Conclusion

For the reasons stated herein, Third-Party Defendants Philip Johnson Ritchie & Fiore Architects' Motion to Dismiss the Amended Third Party Complaint is GRANTED. The Clerk of the Court is ordered to dismiss Third-Party Defendants Philip Johnson Ritchie & Fiore Architects and CK Architect, P.C. from the case. Third-Party Defendant One Central Park West PT Associates Limited's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Clerk of the Court is ordered to dismiss counts I, IV, V, VI, VII, and VIII of the Amended Third Party Complaint as to Third-Party Defendant One Central Park West PT Associates Limited Partnership.

SO ORDERED.

Dated:     February 26, 2007
           New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

21

Service List:

Gregory R. Begg, Esq.
Denis Serkin, Esq.
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, NJ 07661
Fax: (201) 343-6306

Steven Nelson Kirkpatrick, Esq.
Bryan Clayborne Blair, Esq.
Greenberg Traurig LLP
2540 Colorado Avenue, Suite 400 East
Santa Monica, CA 90404
Fax: (212) 805-5585

Scott Kenneth Winikow, Esq.
Zetlin & De Chiara LLP
900 Merchants Concourse - Ste. 405
Westbury, NY 11590
Fax: (516) 832-2555

Marc Shea Krieg, Esq.
Krieg Associates, P.C.
5 Heather Court
Dix Hills, NY 11746
Fax: (631) 493-0763