UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

PETER SPALLUTO,                          :

                        Plaintiff,      :      04 Civ. 7497 (RJS)(HBP)

      -against-                          :
                                                REPORT AND
TRUMP INTERNATIONAL HOTEL                :      RECOMMENDATION
& TOWER,
                                         :
                        Defendant.      :
                                         :
----------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE RICHARD J. SULLIVAN, United States

District Judge,


I.  Introduction


            By motion docketed on December 27, 2007 (Docket Item

153), Spalluto's counsel seek fees and costs for their work in

this matter.  For the reasons set forth below, I respectfully

recommend that Spalluto's counsel be awarded $125,690.00 in fees

and $17,949.58 in costs for a total award of $143,639.58.


II. Facts


      A.  Background


            On September 22, 2004, Spalluto and Access 4 All, Inc.

brought this action against Trump International Hotel and Tower

and One Central Park West PT Associates Limited Partnership[1]
seeking injunctive relief for alleged violations of the Americans
with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (the "ADA") at
the Trump International Hotel and Tower Condominium (the "Hotel")
located at One Central Park West, New York, New York.  Plaintiffs
alleged that architectural barriers at the Hotel prevented
Spalluto, a disabled individual who uses a wheelchair, and other
disabled individuals from using and enjoying the goods and
services offered at the Hotel (First Amended Complaint, dated
Dec. 23, 2004 ("Am. Compl.") ¶¶ 12-18, 23).  Specifically,
plaintiffs alleged, among other things, that the Hotel's entrance
path, common-area restrooms, and guest rooms did not comply with
the ADA and the ADA Accessability Guidelines ("ADAAG") (Am.
Compl. ¶ 19).  In total, plaintiffs alleged 34 violations of the
ADA and ADAAG (Am. Compl. ¶ 19).

On December 28, 2005, defendant Trump International
Hotel and Tower ("Trump") filed an amended third-party complaint
against the Hotel's sponsor and the two architectural firms it
had hired, seeking indemnification for any judgment plaintiff
obtained against Trump in the underlying ADA action and alleging
various state law claims.  The two architectural firms were

---

[1]Shortly after the complaint was filed, plaintiffs
voluntarily dismissed One Central Park West PT Associates Limited
Partnership from the case (see Docket Item 3).

dismissed from the case, while certain claims against the Hotel's sponsor survived (see Docket Item 120).

On October 12, 2006, the Honorable Kenneth M. Karas, United States District Judge, granted in part Trump's summary judgment motion and dismissed the claims of Access 4 All for lack of standing. See Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., 458 F. Supp.2d 160, 175 (S.D.N.Y. 2006). Judge Karas, however, denied Trump's motion with respect to Spalluto.

On December 6, 2007, your Honor approved the Consent Decree between Spalluto and Trump (Order, dated Dec. 6, 2007 ("12/6/07 Order") ¶ 1). In exchange for plaintiff's release of his claims, Trump agreed to make alterations at the Hotel to include "8 fully accessible rooms" by September 9, 2009 (Consent Decree, dated Nov. 21 & 29, 2007 ("Consent Decree") ¶¶ 2, 3, annexed to 12/6/07 Order). Pursuant to the Consent Degree, the accessible rooms

> shall be distributed among each class of rooms available in the hotel and not be available in just one class of accommodation. At least one accessible guest room shall have a view of Central Park. The Defendant shall reconfigure its fully accessible guest rooms to be accessible not only as to toilet and bathroom facilities but additionally as to path of travel in the room, accessible counter space, accessible tables and closet space.

(Consent Decree ¶ 2). Trump also agreed to maintain these rooms in working condition and ensure that its staff is trained and

familiar with the modifications to accommodate disabled guests (Consent Decree ¶ 2).

Your Honor retained jurisdiction to enforce the Consent Decree and to determine the issue of Spalluto's attorneys' fees and costs (12/6/07 Order ¶ 2).

B. The Pending
   Fee Application

Spalluto's counsel seeks attorneys' fees in the amount of $262,763.75 and costs in the amount of $23,422.35 in connection with their representation of Spalluto.

Four attorneys and one paralegal rendered services in connection with Spalluto's claim. Their qualifications are as follows:

Lawrence A. Fuller, Esq. - Lawrence Fuller is a partner at Fuller, Fuller & Associates and was admitted to the New York bar in 2003. Lawrence Fuller graduated from the University of Miami School of Law in 1974 and has thirty-two years experience as a trial attorney. He specializes in actions under Title II and Title III of the ADA. In addition, Lawrence Fuller is on the Board of Directors of the Advocacy Center for Persons with Disabilities and is a member of the Disability Access Committee for the City of Miami Beach. Lawrence Fuller seeks compensation at a rate of $425.00 per hour (Resume of Lawrence A. Fuller, annexed

4

as Exhibit C to Plaintiff's Verified Application for Attorneys' Fees, Costs and Expert Fees and Accompanying Memorandum of Law, dated Dec. 27, 2007 ("Plf. Fee App.")).

John P. Fuller, Esq. - John Fuller is a partner of Fuller, Fuller & Associates and a 1978 graduate of Nova University School of Law. John Fuller has approximately twenty-eight years of experience as a trial attorney. He also seeks compensation at a rate of $425.00 per hour (Resume of John P. Fuller, annexed as Exhibit C to Plf. Fee App.).

Thomas B. Bacon, Esq. - Bacon's resume does not specify his position at Fuller, Fuller & Associates, but I assume that he is a senior associate or of counsel. He graduated from American University College of Law in 1989 and has eighteen years of experience as a trial attorney. He specializes in representing clients in actions brought under Title III of the ADA. Bacon seeks compensation at a rate of $350 per hour (Resume of Thomas B. Bacon, annexed as Exhibit C to Plf. Fee App.).

Mario B. Mikelinich, Esq. - The papers submitted in support of the fee application are unclear concerning the nature of Mikelinich's practice. His invoice reflects an address for "Mario B. Mikelinich, P.C." and I, therefore, assume that Mikelinich is a solo practitioner who provided

services to Fuller, Fuller & Associates as an independent contractor. He graduated from New York Law School in 1984 and was admitted to the New York bar in 1985. Mikelinich has twenty-three years of experience as an attorney. Mikelinich seeks compensation at a rate of $425 per hour (Resume of Mario B. Mikelinich, annexed as Exhibit C to Plf. Fee App.).

Paralegal from Fuller, Fuller & Associates - Plaintiff's counsel fail to provide any information concerning the paralegal's qualifications. The paralegal seeks to be compensated at a rate of $115 per hour.

Counsel seek compensation calculated as follows:

| | | |
|---|---|---|
| Lawrence A. Fuller | 460.45 hours x $425/hour = | $ 195,691.25[2] |
| John P. Fuller | 50.45 hours x $425/hour = | $ 21,441.25 |
| Thomas B. Bacon | 82.00 hours x $350/hour = | $ 28,700.00[3] |
| Mario B. Mikelinich | 31.45 hours x $425/hour = | $ 13,366.25 |
| Paralegal | 31.00 hours x $115/hour = | $ 3,565.00 |
| **TOTAL** | **655.35** | **$ 262,763.75** |

(Plf. Fee App. at 10; Invoice, dated Feb. 5, 2008 ("Fuller Invoice"), annexed as Exhibit 4 to Plaintiff's Reply to

---

[2] In their initial application, plaintiff's counsel sought compensation for 438.05 hours of work by Lawrence Fuller, resulting in a total fee of $186,171.25.

[3] In their initial application, plaintiff's counsel sought compensation for 65.00 hours of work by Thomas Bacon, resulting in a total fee of $22,750.00.

Defendant's Response to Plaintiff's Verified Application for Attorneys' Fees, Costs and Expert Fees and Accompanying Memorandum of Law, dated Feb. 5, 2008 ("Plf. Reply")).

In addition to the foregoing fees, counsel also seek the following costs:

| | |
|---|---|
| Expert Fees | $ 11,637.50 |
| Travel Expenses | $  6,967.09 |
| Photocopies | $  1,831.89 |
| Depositions | $    941.15 |
| Telephone and Faxes | $    774.33 |
| Reinspection Fee | $    750.00 |
| Filing Fees | $    200.00 |
| Postage and Courier | $    180.39 |
| Process Server | $    140.00 |
| **TOTAL** | **$ 23,422.35** |

(Summary of Expenses, annexed as Exhibit G to Plf. Fee App.).

The hours expended by plaintiff's counsel and the costs outlined above are taken from the exhibits to plaintiff's reply papers, which include the time spent by counsel in preparing those papers.

III.  <u>Analysis</u>

Under the ADA, the court "may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs[.]"  42 U.S.C. § 12205.  A plaintiff is a prevailing party "when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that

directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). "Under the ADA, consent decrees may serve as the bases for an award of attorney's fees[,]" Lazarus v. County of Sullivan, 269 F. Supp.2d 419, 421 (S.D.N.Y. 2003), because they "create the material alteration of the legal relationship of the parties[.]" Buckhanon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 604 (2001). Here, Spalluto is clearly a "prevailing party" for purposes of the ADA because the parties entered into a consent decree that was approved by your Honor and under which Trump agreed to modify its property so that certain rooms would be accessible to the disabled (see Docket Item 151). Thus, plaintiff has established his right to recover his legal fees, and the only remaining inquiry is the amount of reasonable attorneys' fees and costs to which Spalluto is presumptively entitled. See Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust") (internal quotation marks omitted); DeFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985).

A.  Applicable Principles

        "In determining a 'presumptively reasonable fee,' a court must determine 'what a reasonable paying client would be willing to pay' for the legal services, in other words, the

8

appropriate market rate for counsel over the course of the number of hours appropriately worked." <u>Torres v. City of New York</u>, 07 Civ. 3473 (GEL), 2008 WL 419306 at *1 (S.D.N.Y. Feb. 14, 2008), <u>quoting</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 112 (2d Cir. 2007), <u>superseded and amended on other grounds</u>, 522 F.3d 182 (2d Cir. 2008).[4]

> [T]he district court should, in determining what a reasonable, paying client would be willing to pay, consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted <u>pro</u> <u>bono</u> (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

<u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, <u>supra</u>, 522 F.3d at 184; <u>accord</u> <u>Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.</u>, 07-CV-656 (FB)(KAM), 2007 WL 4324019 at *5 n.5 (E.D.N.Y. Dec. 7, 2007).

---

[4]The calculation described in the text was previously described as the "lodestar" calculation.  The Court of Appeals has recently concluded the "value of this term as a metaphor has deteriorated to the point of unhelpfulness" and, at least in one opinion, has abandoned its use.  The Court of Appeals has not, however, required its future panels to abandon the term.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, <u>supra</u>, 522 F.3d at 190 & n.4.

The salient aspects of the fee inquiry were comprehensively but succinctly summarized in McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir. 2006):

> In calculating attorney's fee awards, district courts use the lodestar method-hours reasonably expended multiplied by a reasonable hourly rate. See A.R. ex rel. R.V. v. New York City Dept. of Ed., 407 F.3d 65, 79 (2d Cir. 2005); see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989). In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials. See Chambless, 885 F.2d at 1058; New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). A district court may exercise its discretion and use a percentage deduction "'as a practical means of trimming fat from a fee application,'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146), and the Supreme Court has been careful to note that only those hours "reasonably expended" are to be awarded. See Hensley v. Eckerhart, 461 U.S. 424, 434-35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A reasonable hourly rate is a rate "in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); Chambless, 885 F.2d at 1058-59. A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate. See Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

The hours actually expended and the rates actually charged are, of course, not dispositive. Foster v. Kings Park Cent. Sch. Dist., 174 F.R.D. 19, 27 (E.D.N.Y. 1997). An award of fees must be limited to the number of hours reasonably expended and limited to reasonable hourly rates. As the Second Circuit

has cautioned:  "[A]ttorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees."  <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1139 (2d Cir. 1983) (internal citations and quotations omitted).

B.   Reasonableness of
     <u>the Hours Expended</u>

        The Honorable Loretta A. Preska, United States District Judge, has summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee application:

> To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work as they are documented by the attorney's records.  <u>See</u> <u>Forschner Group, Inc. v. Arrow Trading Co., Inc.</u>, No. 92 Civ. 6953 (LAP), 1998 WL 879710, at *2 (S.D.N.Y. Dec. 15, 1998).  Next the court looks to "its own familiarity with the case and its experience generally . . . .  Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court."  <u>AFP Imaging Corp. v. Phillips Medizin Sys.</u>, No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1 (S.D.N.Y. Dec. 13, 1994) (quoting <u>Clarke v. Frank</u>, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 236 (2d Cir. 1985))).
>
>          . . . .
>
> Finally, billing judgment must be factored into the equation.  <u>Hensley</u>, 461 U.S. at 434; <u>DiFilippo</u>, 759 F.2d at 235-36.  If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours.  <u>In re "Agent Orange"</u>

> Products Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987)
> (stating that "in cases in which substantial numbers of
> voluminous fee petitions are filed, the district court
> has the authority to make across-the-board percentage
> cuts in hours 'as a practical means of trimming fat
> from a fee application'" (quoting Carey, 711 F.2d at
> 1146)); see also United States Football League v.
> National Football League, 887 F.2d 408, 415 (2d Cir.
> 1989) (approving a percentage reduction of total fee
> award to account for vagueness in documentation of
> certain time entries).

Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00

Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002);

accord Hensley v. Eckerhart, supra, 461 U.S. at 434; see also

Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Orchano

v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997);

Sulkowska v. City of New York, 170 F. Supp.2d 359, 365 (S.D.N.Y.

2001).

The party seeking fees bears the burden of establishing

that the number of hours for which compensation is sought is

reasonable. Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec.

Workers, 34 F.3d 1148, 1160 (2d Cir. 1994), citing Hensley v.

Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n

of the City of New York v. City of New York, 97 Civ. 7895 (SAS),

98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31,

2003), citing Blum v. Stenson, 465 U.S. 886, 897 (1984).

Counsel has submitted a verification attaching invoices

for the work done by the four attorneys and one paralegal who

worked on the case (see Invoice of Mario B. Mikelinich, P.C.,

dated Dec. 17, 2007 ("Mikelinich Invoice"), annexed as Exhibit A-2 to Plf. Fee App.; Fuller Invoice). The invoices set forth the date on which services were performed, the hours spent, and the nature of the work performed for each attorney and the one paralegal. Such a submission meets the evidentiary threshold for the recovery of attorney's fees. See Boster v. Braccia, 06-CV-4756 (JG)(RER), 2007 WL 4287704 at *2 (E.D.N.Y. Dec. 4, 2007) (invoices supported award of attorneys' fees because they were "sufficiently detailed"); New Paltz Cent. Sch. Dist. v. St. Pierre, 02-CV-981 (FJS)(RFT), 2007 WL 655603 at *2 (N.D.N.Y. Feb. 26, 2007) (same).

As noted above, plaintiff's counsel seeks compensation for 655.35 hours of attorney time and 31 hours of paralegal time. Trump challenges the total hours expended on plaintiff's case as unreasonable on several grounds.

First, Trump contends that an across-the-board reduction of 50% should apply to the total hours billed by Lawrence Fuller because certain billed time was excessive in relation to the tasks performed (Defendant's Opposition to Plaintiff's Application for Attorneys' Fees, Costs and Expert Fees, dated Jan. 18, 2008 ("Def. Mem.") at 8-11). I agree that Lawrence Fuller's invoice contains time entries that are excessive. For example, Fuller billed .20 hours for reviewing a one paragraph Rule 7.1 disclosure statement (Fuller Invoice at

8/29/05 entry), billed .60 hours for "Phone call(s) with opposing counsel (left message); Phone call(s) with opposing counsel's secretary" (Fuller invoice at 4/10/07 entry), billed 3.10 hours reviewing a 45 page evacuation procedure manual (Fuller invoice at 4/23/07 entry), and billed 1.20 hours to preparing a notice of deposition (Fuller Invoice at 6/26/07 entry, 6/27/07 entry). Similar instances of excessive billing are present in the balance of the invoice. Many of the tasks to which Fuller devoted an unreasonable time, however, such as placing phone calls and reviewing letters, are rather minor when placed in the context of this litigation as a whole. For instance, Trump does not challenge as excessive the time Fuller spent drafting Spalluto's opposition to Trump's dispositive motion (see Fuller Invoice at 5/2/05 entry (3.80 hours), 5/4/05 (3.50 hours)) or his research into ADA standing issues in preparation for oral argument on this disposition motion (see Fuller Invoice at 9/29/06 entry (2.00 hours), 10/3/06 entry (2.50 hours), 10/4/06 entry (3.00 hours), 10/5/06 entry (3.20 hours)).

Nevertheless, an across-the-board reduction is warranted because the excessive time entries are located throughout the entire invoice. See Rahman v. Smith & Wollensky Rest. Group, Inc., 06 Civ. 6198 (LAK)(JCF), 2008 WL 1899938 at *4 (S.D.N.Y. Apr. 29, 2008) (applying 33% reduction where time entries reflected "excessive billing"); Winkler v. Metro. Life

Ins. Co., 03 Civ. 9656 (SAS), 2006 WL 2347826 at *2 (S.D.N.Y. Aug. 10, 2006) (imposing 20% reduction for "excessive charges and lack of delegation"); Rosso v. Pi Mgmt. Assocs., 02 Civ. 1702 (KNF), 2006 WL 1227671 at *4 (S.D.N.Y. May 3, 2006) (applying 15% reduction for excessive billing and vague time entries). Accordingly, I recommend a 15% across-the-board reduction of Lawrence Fuller's hours to account for excessive billing.

Trump next argues that an additional across-the-board reduction of 25% should be applied to the hours expended by all the attorneys from the Fuller firm because many time entries are vague, set forth in "block-billing" format, and inconsistent. I agree that the time entries on Lawrence Fuller's invoice that provide cursory descriptions, such as "phone call(s) with client," "prepare correspondence to co-counsel," "prepare correspondence to client," "conference with client," and "prepare letter to court" are too vague. Courts have found similar descriptions to be deficient. E.g., Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F. Supp.2d 509, 522 (W.D.N.Y. 2001) (finding descriptions such as "hearing preparation," "telephone conference with client," and "review records" too vague). These entries fail to provide any information about the nature of and topics discussed in the calls and letters listed in the entries (see, e.g., Fuller Invoice at 8/10/04 entry, 1/4/05 entry, 1/7/05 entry, 1/21/05 entry, 1/25/05 entry). Many of the time entries

15

for John Fuller and Thomas Bacon are similarly vague (see, e.g.,
Fuller Invoice at 8/30/04 entry, 9/2/04 entry, 9/7/04 entry (John
Fuller); Fuller Invoice at 3/28/07 entry, 4/3/07 entry, 7/23/07
(Bacon)).  This lack of detail is sufficient to support a
reduction in the hours billed.  See Kirsch v. Fleet St., Ltd.,
148 F.3d 149, 172-73 (2d Cir. 1998) (upholding 20% reduction in
billed time for vagueness and other deficiencies where many time
entries merely read "letter to court," "staff conference," and
"work on motion"); Tucker v. Mukasey, 03 Civ. 3106 (LTS)(FM),
2008 WL 2544504 at *1 (S.D.N.Y. June 20, 2008) (applying
percentage reduction in hours billed on basis of vagueness
because entries "fail[ed] to describe adequately the nature of
the calls, the contents of the reports or documents, or the
topics of discussions").

        The vague nature of Lawrence Fuller and John Fuller's
time entries is exacerbated by their frequent use of "block-
billing."  "While not prohibited, block billing has a tendency to
obfuscate the amount of time expended on distinct tasks and
introduces an element of vagueness into a fee application, making
it difficult to determine if the reported hours are duplicative
or unnecessary."  Ass'n of Holocaust Victims for Restitution of
Artwork & Masterpieces v. Bank Austria Creditanstalt AG, 04 Civ.
3600 (SWK), 2005 WL 3099592 at *5 (S.D.N.Y. Nov. 17, 2005)
(internal quotation marks omitted).  In this case, the time

entries of Lawrence Fuller and John Fuller reflect extensive use of block billing (see, e.g., Fuller Invoice at 6/14/07 entry, 9/4/07 entry (John Fuller); Fuller Invoice at 3/31/05 entry, 5/4/05 entry (Lawrence Fuller)). When coupled with the vague descriptions of individual tasks as described above, the block-billed entries on these invoices make it nearly impossible to assess the reasonableness of the hours billed. The following entry, for which Lawrence Fuller billed 3.75 hours, illustrates the problem:

> Reviewed Defendant's Reply Brief to Plaintiff's Responses to Motion to Dismiss; Reviewed case law; Drafted Response to Defendant's reply brief; Drafted Affidavit for Plaintiff; Phone call(s) with Plaintiff regarding Applicant

(Fuller Invoice at 5/31/07 entry). From this description, it is impossible to ascertain how much time was allocated to tasks such as research and reviewing documents as opposed to drafting documents and providing advice to Spalluto over the phone. While the use of block-billing does not automatically compel an across-the-board reduction, Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2008 WL 1166309 at *6 (S.D.N.Y. Apr. 7, 2008), the difficulty created by Lawrence and John Fuller's "substantial" use of block-billing in this case warrants a reduction. Alexander v. Amchem Prods., Inc., 07 Civ. 6441 (RJS), 2008 WL 1700157 at *8 n.8 (S.D.N.Y. Apr. 3, 2008); see Aiello v. Town of Brookhaven, 94-CV-2622 (FB)(WDW), 2005 WL 1397202 at *3 (E.D.N.Y.

17

June 13, 2005) (applying 10% reduction to billed hours because of attorneys' "substantial" use of block-billing); <u>see also</u> <u>Molefi v. Oppenheimer Trust</u>, 03 CV 5631 (FB)(VVP), 2007 WL 538547 at *7 (E.D.N.Y. Feb. 15, 2007) (applying 15% reduction for block-billing and excessive billing); <u>Klimbach v. Spherion Corp.</u>, 467 F. Supp.2d 323, 332 (W.D.N.Y. 2006) (reducing 10% of hours billed because of vagueness and block-billing); <u>Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.</u>, 277 F. Supp.2d 323, 326 (S.D.N.Y. 2003) (applying 15% reduction for block-billing and excessive time entries). Accordingly, I recommend further reducing Lawrence Fuller's and John Fuller's hours by 15% to account for the substantial use of block-billing coupled with vague time entries.[5]

In addition, Trump claims that many of the time entries for the attorneys from the Fuller firm are inconsistent and, in some cases, inaccurate. According to Trump, these are time charges by one of the Fuller attorneys for a conference that was supposedly attended by all three attorneys. However, the other two Fuller attorneys do not bill for the conference. Specifically, Trump points to three time entries of John Fuller for such conferences or meetings for which there is no

---

[5]This 15% reduction also takes into account the time entries Trump labels as "double and triple billing" (<u>see</u> Def. Mem. at 10-11) because the deficiencies with these entries stem from the vague descriptions of the tasks performed.

corresponding time entry on the invoices of Lawrence Fuller or
Bacon (see Fuller Invoice at 11/1/06 entry, 4/4/07 entry, 6/14/07
entry). I find that these inconsistencies are not so numerous as
to warrant an additional percentage reduction. Kirsch v. Fleet
St., Ltd., 92 Civ. 932 (DLD), 1996 WL 695687 (S.D.N.Y. Dec. 4,
1996), aff'd, 148 F.3d 149 (2d Cir. 1998), the case upon which
Trump relies, does not compel a different conclusion. In Kirsch,
a 20% reduction was applied for "vague, inconsistent, or
redundant entries." Kirsch v. Fleet St., Ltd., supra, 1996 WL
695687 at *5. Here, the inconsistencies are de minimus and the
recommended 15% reduction already accounts for the deficiencies
based on excessive, vague, and block-billed entries. Moreover,
John Fuller's three time entries, which amount to a total of 2.10
hours out of 655, do not raise questions about the accuracy of
the entries as a whole. Indeed, the invoices of the Fuller
attorneys are consistent with one another with respect to other
conferences they held (see, e.g., Fuller Invoice at 1/7/05 entry,
5/5/05 entry, 6/14/07). Accordingly, in light of the minimal
nature of the inconsistencies cited, I recommend that no
reduction be applied to the billed hours on the basis of
inconsistent time entries.

Trump also argues that all the entries logged by
Mikelinich are too vague to support an award of attorneys' fees
and that his application should be denied completely on this

basis.  I find that almost all of Mikelinich's entries lack
sufficient detail to permit review of the reasonableness of the
hours he spent on Spalluto's case.  His time entries are
particularly troubling because his contribution to Spalluto's
case seems to have consisted of little more than "reviewing"
documents.  No where does Mikelinich detail the contents of the
documents he reviewed.  In a few entries it is possible to
identify the documents he reviewed since they were filed with the
Court (see, e.g., Mikelinich Invoice at 5/5/05 entry ("Review
summary judgment motion"), 6/1/05 entry ("Review defendant's
reply brief")).  The vast majority of his entries, however,
merely state that he reviewed correspondence from opposing
counsel or co-counsel (see, e.g., Mikelinich Invoice at 3/10/05
entry ("Review correspondence from opposing counsel")).  And many
of the entries completely fail to note the author of the reviewed
correspondence (see, e.g., Mikelinich Invoice, 4/6/07 Entry
("Review correspondence")).  Even when I cross-reference these
entries with the entries of the other attorneys on the case, it
is impossible to discern the nature of Mikelinich's work.
Moreover, the inability to assess the reasonableness of
Mikelinich's hours is compounded by the fact that the smallest
increment Mikelinich used to bill his time was one-quarter of an
hour.  "The use of such large billing increments is
inappropriate."  Cowan v. Ernest Codelia, P.C., 98 Civ. 5548

(JGK)(JCF), 2001 WL 30501 at *8 (S.D.N.Y. Jan. 12, 2001) (finding counsel's excessive billing to be "compounded" by his use of recording time in "increments no smaller than one-quarter hour"); see also Oxford Venture Fund Ltd. P'ship v. CIT Group/Equip. Fin., Inc., 89 Civ. 1836 (SWK)(JCF), 1990 WL 176102 at *2 (S.D.N.Y. Nov. 5, 1990). Thus, Mikelinich's review of a "correspondence" on February 10, 2006 for one-quarter of an hour resulted in a charge of $106.25 (see Mikelinich Invoice at 2/10/06 entry). Because of the lack of details about this correspondence, it is impossible to tell whether Mikelinich billed over $100 to review a two-sentence letter or a ten page letter brief. Such vague entries warrant a reduction because they fail to provide "an adequate basis upon which to determine the reasonableness of the services and hours expended on a particular matter." Tucker v. Mukasey, supra, 2008 WL 2544504 at *1. Accordingly, I recommend that Mikelinich's time be reduced by 75%.

Trump also argues that the hours devoted to preparing Access 4 All's unsuccessful argument that it had standing should be deducted. Specifically, Trump proposes that half of all time billed prior to October 12, 2006 -- the date Judge Karas issued his Opinion and Order dismissing Access 4 All from the case -- should be deducted from the total hours billed by the Fuller attorneys (Def. Mem. at 17). While I find merit in Trump's

argument that time devoted to Access 4 All's unsuccessful arguments should be deducted, <u>see Maddalone v. United Bhd. of Carpenters</u>, 95 Civ. 2112 (JSM), 1999 WL 269913 at *1 (S.D.N.Y. May 4, 1999) (applying percentage deduction "to reflect the time spent on unsuccessful arguments"), I do not agree with the amount of the reduction proposed by Trump. First, it is clear from the time entries on the Fuller invoice that Lawrence Fuller is the only attorney who billed for time spent on Access 4 All's standing argument. Second, a 50% deduction of all time billed prior to October 12, 2006 would not accurately reflect the amount of time Lawrence Fuller devoted to this issue during this time period; a less drastic reduction is warranted. Trump initially attempted to file its summary judgment motion on April 25, 2005 (<u>see</u> Docket Item 13).[6] After this date, Lawrence Fuller began to prepare opposition papers in which he addressed the issue of Access 4 All's standing. One entry during the relevant time period clearly reflects that he worked on the standing issue (<u>see</u>, <u>e.g.</u>, Fuller Invoice at 10/3/06 ("Reviewing case law on issue of standing[.]")). The time billed for this entry, which amounts to 2.50 hours, should be deducted in full. Other entries reflect time billed for preparing plaintiffs' opposition papers;

---

[6]Although these papers were not accepted by the Court on this date because of a filing error, Lawrence Fuller's invoice reflects that he began to review these papers on April 27, 2005 (<u>see</u> Fuller Invoice at 4/28/05 entry).

however, given the vague descriptions of the tasks, (see, e.g., Fuller Invoice at 5/2/05 entry ("Preparing Response to Motion to Dismiss")), and the use of block-billing in these entries, (see, e.g., Fuller Invoice at 5/4/05 entry ("Continuing to Prepare Response to Motion to Dismiss; researched case law on standing; Preparing Plaintiff's Affidavit")), it is impossible to determine how much time Lawrence Fuller devoted to the standing issue as opposed to other issues.  Thus, the time billed in these time entries, which amounts to 18.50 hours,[7] should be reduced by 30%. Accordingly, I recommend that 8.10 hours[8] be deducted from Lawrence Fuller's total time to account for the time he devoted to Access 4 All's unsuccessful standing arguments.

Trump next contends that thirty one[9] entries on Lawrence Fuller's invoice that reflect Fuller either calling or writing to the Hotel's sponsor's counsel should be deducted from his total time on the theory that "there was no reason for

_____

[7] See Fuller Invoice at 5/2/05 entry (3.80 hours), 5/4/05 entry (3.50 hours), 5/5/05 entry (3.00 hours), 9/29/06 entry (2.00 hours), 10/4/06 entry (3.00 hours), 10/5/06 (3.20 hours).

[8] This number was calculated as follows: [2.50 hrs + (18.50 x .3)] = 8.05 hours.  This was rounded up to 8.10 hours.

[9] See Fuller Invoice at 6/3/06 entry, 10/9/06 entry, 11/2/06 entry, 1/10/07 entry, 1/31/07 entry, 2/27/07 entry, 3/9/07 entry, 3/21/07 entry, 4/4/07 entry, 4/5/07 entry, 4/6/07 entry, 4/10/07 entry, 4/11/07 entry, 5/8/07 entry, 5/11/07 entry, 6/15/07 entry, 5/18/07 entry, 6/26/07 entry, 7/19/07 entry, 8/18/07 entry, 9/2/07 entry, 9/4/07 entry, 9/7/07 entry, 9/12/07 entry, 9/14/07 entry, 9/18/07 entry, 10/26/07 entry, 10/30/07 entry, 11/5/07 entry, 11/13/07 entry, 12/3/07 entry.

Plaintiff to frequently communicate with the Sponsor" (Def. Mem. at 18). I disagree. As an initial matter, the majority of these entries do not reflect any communications between Fuller and sponsor's counsel (see, e.g., Fuller Invoice at 1/31/07 ("Preparing letter to opposing counsel"). In fact, many of the letters to "opposing counsel" were actually addressed to Trump's counsel and not the sponsor's counsel, as demonstrated by plaintiff's reply papers (see Letters from Plaintiff's Counsel to Defendant's Counsel, annexed as Exhibit 5 to Plf. Reply). Thus, the factual predicate for Trump's argument is not entirely accurate. To the extent that plaintiff's letters do not account for each of the entries referring to "opposing counsel," a phrase that could possible refer to Trump's counsel, sponsor's counsel, or both, this deficiency is due to vagueness and has already been taken into consideration under the reduction recommended above. In addition, while some entries clearly reflect communications between plaintiff's counsel and Sponsor's counsel (see, e.g., Fuller Invoice at 5/11/07 ("Phone call(s) with opposing counsel (Mr. Blair)"), I decline to deduct such entries on the broad argument that plaintiff's counsel had "no reason" to contact sponsor's counsel. To the contrary, plaintiff has demonstrated that these communications were necessary in some instances to provide notice to sponsor's counsel (see, e.g., Letter, dated June 18, 2007, annexed as Exhibit 5 to Plf. Reply (copying

24

Sponsor's counsel on letter requesting dates for deposition of Trump's general manager)). Lastly, I note that the only attorney to communicate with Sponsor's counsel was Lawrence Fuller and the time he billed for these communications was not unreasonable. Accordingly, I recommend that these thirty-one entries should not be deducted from Lawrence Fuller's total hours.

Lastly, Trump contends that counsels' time for travel should be reduced by 50%. In this District, travel time is compensated at 50% of counsel's reasonable hourly rate "because of the lack or productivity that results when an attorney travels to appointments." Colbert v. Furumoto Realty Inc., 144 F. Supp.2d 251, 261 (S.D.N.Y. 2001); see Moreno v. Empire City Subway Co., 05 Civ. 7768 (LMM)(HBP), 2008 WL 793605 at *5 (S.D.N.Y. Mar. 26, 2008); In re Painewebber Ltd. P'ships Litig, 94 Civ. 8547 (SHS), 2003 WL 21787410 at *4 (S.D.N.Y. Aug. 4, 2003) ("[W]hen determining attorneys' fees, courts in the Southern District of New York generally do not credit travel time at the attorney's full hourly rate and customarily reduce the amount awarded for travel to at least 50% of that rate."). Accordingly, I recommend that the time billed for travel by

Lawrence Fuller (37.00 hours),[10] by John Fuller (4.00 hours),[11] and by Bacon (1.00 hour)[12] be reduced by 50%.

Considering all of the above reductions, I find that the following constitute the reasonable, compensable hours for each attorney and the one paralegal:

Lawrence A. Fuller:    303.75 hours[13]

John P. Fuller:    41.25 hours[14]

Thomas B. Bacon:    81.50 hours[15]

---

[10]See Fuller Invoice at 4/4/07 entry (3.50 hours), 4/25/07 entry (5.00 hours), 7/23/07 entry (3.50 hours), 7/25/07 entry (8.50 hours), 7/26/07 entry (3.50 hours), 7/27/07 entry (4.00 hours), 9/10/07 entry (4.50 hours), 9/11/07 entry (4.50 hours). I decline to include the entry for August 30, 2007 as there is no indication that Fuller billed for travel time on this date.

[11]See Fuller Invoice at 8/27/07 entry (4.00 hours).

[12]See Fuller Invoice at 4/11/07 entry (1.00 hour). I decline to include the entries for April 11, 2007 and May 15, 2007 because Bacon billed his time at a reduced rate to account for his travel.

[13]This number was calculated as follows. First, the hours devoted to Access 4 All's standing issue are deducted: [460.45 hrs - 8.10] = 452.35 hrs. Next, fifty percent of the hours spent traveling are deducted: [452.35 hrs - (37.00 hrs/2) hrs] = 433.85 hrs. Then the deduction of 30% is applied: [433.85 hrs. x .7] = 303.70 hrs. This was rounded up to 303.75 hours.

[14]This number was calculated as follows. Fifty percent of the hours spent traveling are initially deducted: [50.45 hrs - (4.00 hrs/2) hrs] = 48.45 hrs. Then the deduction of 15% is applied: [48.45 hrs. x .85] = 41.25 hrs.

[15]This number was calculated as follows. Fifty percent of the hours spent traveling are deducted: [82.00 hrs - (1.00 hrs/2) hrs] = 81.50 hrs.

Mario B. Mikelinich:     8.00 hours[16]

Paralegal:               31.00 hours

**TOTAL:**                **465.50 hours**

C.  Reasonable
    Hourly Rate

     The hourly rates used in making a fee award should be
market rates "in line with those [rates] prevailing in the
community for similar services by lawyers of reasonably
comparable skill, experience and reputation."  Blum v. Stenson,
supra, 465 U.S. at 896 n.11; accord Reiter v. MTA New York City
Tran. Auth., 457 F.3d 224, 232 (2d Cir. 2006), cert. denied, 127
S.Ct. 1331 (2007).  In addition, the rates used should be
current, and not historic, rates, i.e., rates applicable at the
time of the Court's decision, Farbotko v. Clinton Co., 433 F.3d
204, 210 n.11 (2d Cir. 2005); Gierlinger v. Gleason, supra, 160
F.3d at 882, and should be based on prevailing rates in the forum
district.  A.R. ex rel. R.V. v. New York City Dep't of Educ., 407
F.3d 65, 79 (2d Cir. 2005); Polk v. New York State Dep't of Corr.
Servs., 722 F.2d 23, 25 (2d Cir. 1983).  In determining what a
reasonable hourly rate is, the court should not only consider the
rates approved in other cases in the District, but should also
consider any evidence offered by the parties.  Farbotko v.

---

    [16]This number was calculated as follows.  The 75% reduction
is applied:  [31.45 hrs x .25] = 8.00 hrs.

Clinton Co., supra, 433 F.3d at 208-09.  The Court is also free
to rely on its own familiarity with prevailing rates in the
District.  A.R. ex rel. R.V. v. New York City Dep't of Educ.,
supra, 407 F.3d at 82; Miele v. New York State Teamsters
Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).
"[T]he fee applicant has the burden of showing by 'satisfactory
evidence -- in addition to the attorney's own affidavits' -- that
the requested hourly rates are the prevailing market rates."
Farbotko v. Clinton Co., supra, 433 F.3d at 209, quoting Blum v.
Stenson, supra, 465 U.S. at 896 n.11.

     1.  Partner Rates

     Lawrence Fuller, John Fuller, and Mikelinich seek
compensation at $425 per hour.  In support, plaintiff submits the
affidavit of Kevin Fabrikant, Esq., an attorney admitted to the
Florida state bar and to the United States District Courts for
the Southern, Middle, and Northern Districts of Florida (see
Affidavit of Kevin Fabrikant, Esq., sworn to on Dec. 26, 2007
("Fabrikant Aff.") ¶ 1, annexed as Exhibit H to Plf. Fee App.).
Fabrikant states that he handles actions in the federal courts,
representing both plaintiffs and defendants (Fabrikant Aff. ¶ 1).
Based on his review of the invoices in this case, Spalluto's
counsel's resumes, and his experience in the field of ADA
litigation, he attests that an hourly rate of $425 for Lawrence

Fuller and John Fuller is "within the range of the prevailing market rates in the legal community" (Fabrikant Aff. ¶ 7). Fabrikant's affidavit, however, is irrelevant because there is no indication that Fabrikant is familiar with the prevailing rates in this District.

Trump argues that these attorneys should instead be compensated at $300 per hour because this case presented no novel or complex issues (Def. Mem. at 5-7). I agree that the issues in this case were rather simple, especially in light of the Fuller firm's experience in ADA cases (see Affidavit of Denis Serkin, Esq., sworn to Apr. 25, 2005, annexed as Exhibit E to Def. Mem. (noting that the Fuller firm is involved in 774 ADA actions)). Other courts have taken the complexity or simplicity of the case into account when determining a reasonable hourly rate for these attorneys. E.g., Access 4 All, Inc. v. Grandview Hotel Ltd. P'ship, CV 04-4368 (TCP)(MLO), 2006 WL 566101 at *4 (E.D.N.Y. Mar. 3, 2006) (observing that the Fuller firm has "pursued dozens of [ADA] actions against various hotels in federal courts . . . . These cases involve identical legal issues and similar factual issues. The duplicitous nature of the litigation warrants a reduction in the law firm's fee award"). In this case, as in others, the Fuller attorneys litigated the issue of Access 4 All's standing. See, e.g., Access 4 All, Inc. v. ANI Assocs., Inc., 04-6297 (RBK), 2007 WL 2793373 at *3-*4 (D.N.J. Sept. 25,

2007).  While I recognize that no two cases have identical facts, the similarity between the facts and legal issues in this case and others handled by the Fuller attorneys warrants a reduction from the proffered $425 per hour rate.  I do not agree, however, with Trump's proposed rate of $300 per hour.

Within the past three years, Lawrence Fuller, John Fuller, and Mikelinich have been awarded $350 per hour for work done in ADA cases litigated in this District.  <u>Access 4 All, Inc.</u> <u>v. Hi 57 Hotel, LLC</u>, 04 Civ. 6620 (GBD)(FM), 2006 WL 196969 at *3 (S.D.N.Y. Jan. 26, 2006); <u>Access 4 All, Inc. v. Park Lane Hotel,</u> <u>Inc.</u>, 04 Civ. 7174 (SAS)(JCF), 2005 WL 3338555 at *5 (S.D.N.Y. Dec. 7, 2005).  This rate is within the range of prevailing rates in this District for attorneys of similar skill, experience, and reputation at small firms engaged in civil rights litigation.  <u>See</u> <u>Torres v. City of New York</u>, <u>supra</u>, 2008 WL 419306 at *1 (approving rate of $350 per hour for attorney with ten years experience); <u>Garcia v. Yonkers Sch. Dist.</u>, 499 F. Supp.2d 421, 426 (S.D.N.Y. 2007) (awarding rate of $350 per hour for experienced civil rights litigator); <u>Martinez v. Port Auth. of</u> <u>N.Y. & N.J.</u> 01 Civ. 721 (PKC), 2005 WL 2143333 at *26 (S.D.N.Y. Sept. 2, 2005) (rates of $400 per hour for partner and $325 per hour for co-counsel in civil rights case); <u>Williamsburg Fair</u> <u>Hous. Comm. v. New York City Hous. Auth.</u>, 76 Civ. 2125 (RWS), 2005 WL 736146 at *12-*13 (S.D.N.Y. Mar. 31, 2005) (finding $375

a reasonable rate for attorneys with thirty-eight and twenty-five years experience); <u>Moses v. New York City Transit Auth.</u>, 01 Civ. 4280 (RMB)(MHD), 2003 WL 22939122 at *3-*4 (S.D.N.Y. Dec. 12, 2003) (finding $350 rate reasonable for lead civil rights attorney); <u>New York State Nat'l Org. for Women v. Pataki</u>, 93 Civ. 7146 (RLC), 2003 WL 2006608 at *2 (S.D.N.Y. Apr. 30, 2003) (in civil rights class action, finding rates of $400 and $430 to be on the "high end" of the reasonable range for civil rights attorneys with over thirty years of experience each) (collecting cases); <u>M.L. v. Bd. of Educ.</u>, 02 Civ. 4288 (SHS), 2003 WL 1057476 at *2-*3 (S.D.N.Y. Mar. 10, 2003) (rate of $350-$375 held reasonable for seasoned litigator in civil rights case); <u>Moon v. Gab Kwon</u>, 99 Civ. 11810 (GEL), 2002 WL 31512816 at *2 (S.D.N.Y. Nov. 8, 2002) (civil rights attorney with thirty years' experience entitled to hourly rate of $350).  Given these authorities, the inevitable rise in billing rates, and the effect of inflation in the economy, I recommend that Lawrence Fuller, John Fuller, and Mikelinich be compensated at $375 per hour.

### 2.  <u>Associate Rates</u>

Plaintiff seeks compensation for Thomas Bacon, who has eighteen years of litigation experience, at a rate of $350 per hour.  Trump argues that Bacon should be compensated at a rate of $240 because this was the rate set by the Honorable James C.

Francis, United States Magistrate Judge, in <u>Access 4 All, Inc. v.</u>
<u>Park Lane Hotel, Inc.</u>, <u>supra</u>, 2005 WL 3338555 for an associate in
the Fuller firm (Def. Mem. at 5).  Trump is mistaken, however,
because the $240 per hour rate was merely a rate that was
suggested to Judge Francis and which he declined to adopt.  In
fact, Judge Francis refused to award the associate in that case
any fees since her qualifications were never disclosed.
Nevertheless, a reduction in Bacon's rate is warranted.

        The proffered rate of $350 per hour is above the range
of prevailing rates in this District for associates in small
civil rights firms.  See <u>Tlacoapa v. Carregal</u>, 386 F. Supp.2d
362, 369-70 (S.D.N.Y. 2005) (finding rate of $250 per hour for
associate in small civil rights firm with twenty years experience
reasonable); <u>Morris v. Eversley</u>, 343 F. Supp.2d 234, 247
(S.D.N.Y. 2004) (concluding that a reasonable rate for associate
with one to three years' experience at large New York City law
firm working <u>pro</u> <u>bono</u> on civil rights case was $200 per hour);
<u>Betancourt v. Giuliani</u>, 325 F. Supp.2d 330, 333 (S.D.N.Y. 2004)
(finding $200 per hour a reasonable rate for associates at large
New York City law firm working <u>pro</u> <u>bono</u> on civil rights); <u>Moses</u>
<u>v. New York City Transit Auth.</u>, <u>supra</u>, 2003 WL 22939122 at *3
(finding a rate of $175 per hour for an associate with four years
experience reasonable); <u>Vernon v. Port Auth. of N.Y. & N.J.</u>, 220
F. Supp.2d 223, 230 (S.D.N.Y. 2002) (noting that the range of

rates for associates in the Southern District of New York is between $105 to $180 per hour); Knoeffler v. Town of Mamakating, 126 F. Supp.2d 305, 312 (S.D.N.Y. 2000) (awarding civil rights lawyer with seven years experience $200 per hour); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp.2d 381, 386-87 (S.D.N.Y. 2000) (noting that $350 was a reasonable hourly rate for civil rights attorney with more than fifteen years experience); cf. Heng Chan v. Sung Yue Tung Corp., 03 Civ. 6048 (GEL), 2007 WL 1373118 at *4 (S.D.N.Y. May 8, 2007) (awarding $400 per hour to civil rights attorney with fifteen years' experience who was "associate director of the Urban Justice Center and an adjunct professor at New York Law School"). Almost all of these cases, however, involved associates with far fewer years of litigation experience than Bacon has. Recognizing this, but also taking into account the rather simple issues raised in this case, I recommend a rate of $275 per hour for Bacon.

### 3. Paralegal Rates

Plaintiff seeks compensation for paralegal time at $115 per hour. Trump submits that this rate should be reduced to $100 per hour (Def. Mem. at 7). "The 'prevailing market rates in the relevant community' govern the rate at which paralegal hours are valued." McKay v. Barnhart, 327 F. Supp.2d 263, 271 (S.D.N.Y. 2004). In this District, the market value for paralegals' time

33

ranges from $50 to $150 per hour depending on experience levels. Wise v. Kelly, 05 Civ. 5442 (SAS)(THK), 2008 WL 482399 at *11 (S.D.N.Y. Feb. 21, 2008) (awarding hourly rate of $100 per hour for paralegal work); Kinneary v. City of New York, 536 F. Supp.2d 326, 336 (S.D.N.Y. 2008) (finding rate of $75 per hour as reasonable for paralegal work; Heng Chan v. Sung Yue Tung Corp., supra, 2007 WL 1373118 at *5 (finding rates ranging from $50 to $150 per hour for paralegals to be reasonable); In re Stock Exchs. Options Trading Antitrust Litig., 99 Civ. 0962 (RCC), 2006 WL 3498590 at *10 n.6 (S.D.N.Y. Dec. 4, 2006) ("[P]aralegal . . . time is reasonably compensated at up to $150 per hour."); Sylvester v. City of New York, 03 Civ. 8760 (FM), 2006 WL 3230152 at *9 (S.D.N.Y. Nov. 8, 2006) (finding billing rate of $100 per hour to be reasonable for paralegal at small firm in Manhattan); Nam Yang v. ACBL Corp., 04 Civ. 8987 (LBS), 2006 WL 435720 at *2 (S.D.N.Y. Feb. 22, 2006) (finding "$100 an hour is well within the range of paralegal fees recently awarded by other Southern District of New York courts" in civil rights cases); Morris v. Eversley, supra, 343 F. Supp.2d at 248 (awarding hourly rate of $125 for paralegal at a large, private firm in a civil rights case); Moses v. New York City Transit Auth., supra, 2003 WL 22939122 at *3-*4 (awarding $75 hourly rate for paralegal in a civil rights case); Marisol A. ex rel. Forbes, supra, 111 F. Supp.2d at 389 (awarding paralegals in large firm hourly rates

from $75 to $110 depending on their experience levels in a civil rights case).  Plaintiff has not submitted any information concerning the paralegal's background and experience.  Courts have reduced proposed rates for paralegals where such information is not provided.  E.g., <u>Tlacoapa v. Carregal</u>, <u>supra</u>, 386 F. Supp.2d at 370 (reducing requested rate of $125 per hour to $75 per hour where plaintiff failed to submit information about paralegal's experience).  Based on the above authorities and the lack of information concerning this paralegal's experience level, I recommend that the paralegal be compensated at a reduced rate of $75 per hour.

D.  <u>Lodestar Reduction</u>

Trump argues that the product of the hours and rates recommended above should be reduced for two reasons.  First, Trump contends that no attorneys' fees should be awarded for the hours expended on Access 4 All's unsuccessful claims.  To account for this, Trump proposes that all fees before October 12, 2006 -- the date on which Judge Karas dismissed Access 4 All for lack of standing -- should be divided by half and deducted from the lodestar (Def. Mem. at 16-17).

The court must first determine whether (1) the "unsuccessful claim is sufficiently distinct from the claims on which the plaintiff prevailed[,]" <u>Raniola v. Bratton</u>, 96 Civ.

4482 (MHD), 2003 WL 1907865 at *3 (S.D.N.Y. Apr. 21, 2003), or
(2) whether the successful and unsuccessful claims are
"inextricably intertwined" and "involve a common core of facts or
[are] based on related legal theories[.]" Reed v. A.W. Lawrence
& Co., 95 F.3d 1170, 1183 (2d Cir. 1996). In the former case,
the court should decline to order compensation "dedicated to
[the] severable unsuccessful claims." Quaratino v. Tiffany &
Co., 166 F.3d 422, 425 (2d Cir. 1999), vacated on other grounds,
166 F.3d 422 (2d Cir. 1999). In the latter case, the court may
award fees for "unsuccessful claims as well as successful
ones[.]" Quaratino v. Tiffany & Co., supra, 166 F.3d at 425.
These standards apply equally to actions seeking monetary and
injunctive relief. See Green v. Torres, 361 F.3d 96 (2d Cir.
2004) (monetary relief); Abrahamson v. Bd. of Educ. of the
Wappingers Falls Cent. Sch. Dist., 374 F.3d 66 (2d Cir. 2004)
(injunctive relief).

Here, because the merits of Access 4 All's claim was
"inextricably intertwined" with Spalluto's, no reduction of the
lodestar amount is appropriate on this basis. Access for All did
not assert a claim that was independent of Spalluto's (see Am.
Compl. ¶¶ 19-28). Both plaintiffs sought injunctive and
declaratory relief for Trump's alleged violations of the ADA and
ADAAG (see Am. Compl. at 11-12). Indeed, Judge Karas found that,
because Access 4 All failed to show injury to any of its members

other than Spalluto, its claim was "identical" to Spalluto's.
Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., supra,
458 F. Supp.2d at 175.

Trump next argues that the lodestar amount should be
reduced by 50% to account for Spalluto's partial success (Def.
Mem. at 17-18). "The Second Circuit has stated that the 'most
important factor in determining the reasonableness of a fee is
the degree of success obtained.'" Weingarten v. Optima Commc'ns
Sys., Inc., 544 F. Supp.2d 193, 196 (S.D.N.Y. 2008), quoting Pino
v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996); accord Hensley v.
Eckerhart, supra, 461 U.S. at 434-37. The Second Circuit
recently provided guidance on making such an evaluation:

> A district court's assessment of the 'degree of success
> achieved in a case is not limited to inquiring whether
> a plaintiff prevailed on individual claims. See Kassim
> v. City of Schenectady, 415 F.3d at 254. Both 'the
> quantity and quality of relief obtained,' as compared
> to what the plaintiff sought to achieve as evidenced in
> her complaint, are key factors in determining the
> degree of success achieved. Carroll v. Blinken, 105
> F.3d 79, 81 (2d Cir. 1997).

Barfield v. New York City Health & Hosps. Corp., Nos. 06-4137-cv,
06-4310-cv, --- F.3d ---, ---, 2008 WL 3255130 at *16 (2d Cir.
Aug. 8, 2008).

In this case, a reduction in the loadstar amount is
appropriate in light of Spalluto's partial success. As evidenced
by the Consent Decree, Spalluto did not achieve the "quality and
quantity" of the relief he initially sought. Barfield v. New

37

York City Health & Hosps. Corp., supra, --- F.3d at ---, 2008 WL
3255130 at *16 (internal quotation marks omitted).  In his
Amended Complaint, Spalluto sought injunctive relief for 34
violations of the ADAAG, including the Hotel's paths of travel,
general access to goods and services, common-area restrooms,
guest rooms for the disabled, and the indoor pool (see Am. Compl.
¶ 19).  Specifically, these violations included the absence of a
continuous path of travel connecting all essential elements of
the Hotel, protruding objects throughout the Hotel, counter
heights in excess of 36", the lack of accessible common-area
restrooms, doors, sinks, and soap dispensers in the available
common-area restrooms that were not in compliance with the ADAAG,
an insufficient number of guest rooms designated for the
disabled, insufficient grab-bars, sinks, and clear floor space in
the bathrooms of the rooms designated for the disabled, and no
wheelchair access to the indoor pool (see Am. Compl. ¶ 19).

The relief obtained in the Consent Decree, while not
trivial, is more limited.  By September 1, 2009, Trump is
required to have eight fully accessible rooms, including two with
roll-in showers.  The accessible rooms must be distributed among
each class of rooms available at the Hotel, with at least one
room having a view of Central Park.  These rooms must also have
accessible bathrooms, counter space, tables, closet space, and
path of travel (Consent Decree ¶ 1).  In addition, Trump is

required to maintain these rooms in compliance with the ADA and ensure that its staff is trained and familiar with these modifications to accommodate disabled guests (Consent Decree ¶¶ 2-3).

Upon comparing the relief sought in the Amended Complaint and the relief obtained in the Consent Decree, I find that plaintiff's success was neither complete nor <u>de</u> <u>minimis</u>. Trump agreed to have eight fully accessible guest rooms, implement staff policies, and maintain these rooms. This relief directly addresses many of the violations alleged in the Amended Complaint and will inure not only to the benefit of Spalluto but also to the benefit of all disabled individuals who visit the Hotel in the future. The Consent Decree, however, does not provide for modification of the Hotel's paths of travel, general access to goods and services, common-area restrooms, or wheelchair access to the indoor pool, which are all areas which plaintiff specifically alleged were not compliance with the ADAAG. Accordingly, I recommend that the lodestar be reduced an additional 20% to account for plaintiff's partial success.

E.  <u>Expert Fees</u>

Plaintiff seeks an award of expert fees for the services of Herbert Neff and Pablo Baez of Herbert Neff & Associates for 66.50 hours at a billing rate of $175 per hour,

for a total of $11,637.50 (Invoices of Herbert Neff & Associates, dated Aug. 22, 2004, May 4, 2007 & Dec. 19, 2007 ("Neff Invoices"), annexed as Exhibit F to Plf. Fee App.).

The court in its discretion may award a prevailing party its reasonable expert fees as a "litigation expense" pursuant to the ADA.  42 U.S.C. § 12205; <u>Kinneary v. City of New York,</u> <u>supra</u>, 536 F. Supp.2d at 334.

Trump first argues that the experts' travel time (5.25 hours[17]) should be compensated at half their hourly rate (Def. Mem. at 19).  Trump cites no authority for this reduction and my own research has disclosed none.  Although the rationale for reducing the rate of compensation for an attorney's travel time (lack of productivity) applies with equal force to an expert's travel time, an expert's fee for travel time is somewhat different because an expert's fee to plaintiff will ordinarily be the same regardless of what the court does.  Because the experts' fee is recoverable as a cost, is ordinarily a fixed amount, and given the lack of authority, I decline to reduce the amount of the experts' fee here to the extent that it reflects an hourly charge for travel time.

The award of costs here may include taxable costs pursuant to 28 U.S.C. § 1920.  <u>See</u> <u>O'Grady v. Mohawk Finishing</u>

_____

[17]<u>See</u> Neff Invoices 8/22/04 entry (3.50 hours), 5/4/07 entry (3.50 hours), 12/19/07 (3.50 hours).

Prods., Inc., 96-CV-1945 (FJS), 1999 WL 30988 at *7 (N.D.N.Y. Jan. 15, 1999) (noting that court has discretion to award costs pursuant to 28 U.S.C. § 1920 in addition to litigation expenses and costs pursuant to 42 U.S.C. § 12205 to prevailing party in ADA case). "[R]easonable travel expenses for witnesses are taxable as costs pursuant to 28 U.S.C. § 1920." Hogan v. Gen. Elec. Co., 144 F. Supp.2d 138, 143 (N.D.N.Y. 2001), citing 28 U.S.C. § 1821. However, a receipt or other evidence of such travel must be provided. See 28 U.S.C. § 1821. Here, plaintiff fails to provide any receipts corresponding to his experts' travel expenses. Accordingly, I recommend that $918.75[18] be deducted from the experts' costs.

Trump also argues that the requested expert fees should be reduced because the time entries submitted in support of the application do not indicate the dates on which Neff and Baez performed their services. Trump is correct that the records omit these dates; the only dates provided are the three dates that correspond to the three invoices the experts sent to plaintiff's counsel. The itemized descriptions of the experts' work, however, are not dated. This lack of detail prevents me from cross-checking the experts' billing with the Fuller invoice to assess the reasonableness of the experts' hours. Accordingly, I

---

[18]This number was calculated as follows: [5.25 hours x $175/hour] = $918.75.

recommend a reduction of 15% to account for this vagueness.  See Access 4 All, Inc. v. Hi 57 Hotel, LLC, supra, 2006 WL 196969 at *4 (reducing award of expert fees in ADA case where expert's invoice provided "no information concerning the dates when her services alleged were performed").

Trump next contends that time expended by Neff and Baez on behalf of Access 4 All, which Trump estimates amounts to half of the total time they billed, should be deducted from the total number of hours for which they seek compensation because Access 4 All was dismissed as a plaintiff.  Because Access 4 All's claim was identical to Spalluto's claim, I decline to recommend such a deduction.

Lastly, Trump argues that Baez should not be compensated for his "questionable work-product" (Def. Mem. at 19).  Specifically, Trump argues that, because Baez knows Spalluto, spoke with Spalluto about the expert report drafted for this case, and is employed by an organization owned by Spalluto's wife (see Deposition Transcript of Pablo Baez, taken on Aug. 30, 2007 at 12-15, 37, annexed as Exhibit L to Def. Mem.), he should be denied fees for the work he performed in this case.  Trump also notes that, during his deposition, Baez was unable to remember certain details in his expert report.  It appears that Trump is requesting a reduction in the expert fees based on Baez's purported lack of credibility.  After reviewing Baez's

deposition testimony and his expert reports, I reject Trump's argument.  There is no basis in law or logic for reducing an expert's fee simply because he knows the party who retained him. Accordingly, I decline to recommend a reduction of the expert fees on this basis.

     F.   Costs

          Plaintiff seeks $11,784.85 in costs exclusive of expert fees.  Trump argues that plaintiff's costs should be reduced by 50% for costs expended on behalf of Access 4 All and an additional 25% for costs expended on behalf of Spalluto's partial success (Def. Mem. at 20).

          The court in its discretion may award a prevailing party its reasonable costs pursuant to the ADA.  42 U.S.C. § 12205; Kinneary v. City of New York, supra, 536 F. Supp.2d at 334.  "[A]wards of attorney's fees in civil rights suits under fee-shifting statutes . . . normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients."  Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 282 (2d Cir. 1987). Included in the list of recognized, compensable costs are: photocopying, long-distance telephone calls, postage, travel, and messengers.  Patrolmen's Benevolent Ass'n v. City of New York,

supra, 2003 WL 21782675 at *2; <u>Marisol A. ex rel. Forbes v.</u>
<u>Giuliani</u>, <u>supra</u>, 111 F. Supp.2d at 401.

In this case, I decline to recommend a reduction of
plaintiff's costs on the basis of Spalluto's partial success in
the litigation.  Trump provides no authority for the proposition
that a prevailing party's costs may be reduced -- as opposed to
its lodestar figure -- for its partial success in the litigation.

I do agree that the costs uniquely attributable to
Access 4 All's unsuccessful standing argument should be deducted.
However, it is impossible to determine the amount of costs
attributable to this argument because plaintiff's list of costs
does not provide any information concerning why each charge was
incurred.  This lack of detail arises from a more serious
deficiency in plaintiff's application for costs.

Plaintiff bears the burden of proving its reasonable
costs.  <u>Rotella v. Bd. of Educ.</u>, CV 01-0434 (NGG), 2002 WL 59106
at *5 (E.D.N.Y. Jan. 17, 2002); <u>Gonzalez v. Bratton</u>, 147 F.
Supp.2d 180, 211 (S.D.N.Y. 2001).  Yet plaintiff has failed to
submit any documentation supporting his application for costs.
Courts have reduced awards of costs for lack of supporting
documentation.  <u>E.g.</u>, <u>I.L.G.W.U. Nat'l Ret. Fund v. ESI Group,</u>
<u>Inc.</u>, 92 Civ. 0597 (PKL), 2003 WL 135797 at *4 (S.D.N.Y. Jan. 17,
2003) (awarding approximately half of counsels' costs because of
their failure to "submit any bills or receipts for the

expenses"); <u>Rotella v. Bd. of Educ. of New York City</u>, <u>supra</u>, 2002
WL 59106 at *5 (reducing certain costs by 50% for "vagueness and
lack of documentation"); <u>New York State Teamsters Council Health
& Hosp. Fund v. DePerno</u>, 856 F. Supp. 725, 727 (N.D.N.Y. 1994)
(reducing award of expenses by 50% due to failure to submit bills
or receipts).  In this case, while the charges appear to have
been incurred for compensable expenses, such as photocopying,
long-distance telephone calls, postage, and travel, it is
impossible to fully assess the reasonableness of these amounts
without supporting documentation.  This deficiency is compounded
by the vagueness of plaintiff's records.  For example, plaintiff
seeks compensation for "Travel: Airfare for Attorney and Expert"
done on July 7, 2007 (Fuller Invoice at 7/10/2007 entry).
Plaintiff, however, utterly fails to provide further details,
such as the departing location, the destination, and purpose for
this flight, and cross-checking the invoices of the individual
attorneys does not disclose such details.  While plaintiff
undoubtedly incurred compensable expenses during litigation, such
as traveling to New York City from Florida to attend a settlement
conference before me (<u>see</u> Fuller Invoice at 9/10/07 entry), an
award of the total $11,784.85 would not be reasonable.
Accordingly, because of the lack of supporting documentation and
vagueness of plaintiff's records, I recommend that plaintiff's
costs exclusive of expert fees be reduced by 25% to $8,838.64.

G. <u>Summary</u>

I conclude that plaintiff's counsel is entitled to recover $125,690.00 in attorneys' fees and $17,949.58 in costs and expenses according to the following:

**Attorneys' Fees**

| | | | |
|---|---|---|---|
| Lawrence A. Fuller | 303.75 | hours x $375/hour | = $113,906.25 |
| John P. Fuller | 41.25 | hours x $375/hour | = $15,468.75 |
| Thomas B. Bacon | 81.50 | hours x $275/hour | = $22,412.50 |
| Mario B. Mikelinich | 8.00 | hours x $375/hour | = $3,000.00 |
| Paralegal | 31.00 | hours x $75/hour | = $2,325.00 |
| **TOTAL** | **465.50** | | **$157,112.50** |

**Lodestar Reduction for Partial Success**

$157,112.50 - ($157,112.50 x .20) = **$125,690.00**

**Expert Fees**

Expert Fees          $11,637.50

**Reduction for Lack of Documentation of Travel**

$11,637.50 - $918.75 = $10,718.75

**Reduction for Vagueness of Time Entries**

$10,718.75 - ($10,718.75 x .15) = $9110.94

**TOTAL**          **$9,110.94**

**Other Expenses**

| | |
|---|---|
| Travel Expenses | $  6,967.09 |
| Photocopies | $  1,831.89 |

46

| | | |
|---|---|---|
| Depositions | $ | 941.15 |
| Telephone and Faxes | $ | 774.33 |
| Reinspection Fee | $ | 750.00 |
| Filing Fees | $ | 200.00 |
| Postage and Courier | $ | 180.39 |
| Process Server | $ | 140.00 |
| Subtotal | $ 11,784.85 | |

**Reduction for Lack of Documentation:**

$11,784.85 - ($11,784.85 x .25) = **$8,838.64**

**TOTAL EXPERT FEES AND COSTS**     **$17,949.58**

## IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that Spalluto's counsel be awarded $125,690.00 in attorneys' fees and $17,949.58 in costs for a total award of $143,639.58.

## V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the

chambers of the Honorable Richard J. Sullivan, United States District Judge, 500 Pearl Street, Room 615, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Sullivan.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298,

300 (2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59

(2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir.

1983).

Dated:  New York, New York
       August 29, 2008

                                   Respectfully submitted,

                                   _____
                                   HENRY PITMAN
                                   United States Magistrate Judge

Copies transmitted to:

Lawrence A. Fuller, Esq.
Fuller, Fuller & Associates
12000 Biscayne Boulevard
Suite 609
North Miami, Florida  33181

Mario B. Mikelinich, Esq.
Mario B. Mikelinich, P.C.
6800 Jericho Turnpike
Suite 104W
Syossett, New York  11791

Gregory R. Begg, Esq.
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, New Jersey  07661